BAUGH v. HOWZE.

4-8081                                      199 S. W. 2d 940

Opinion delivered March 3, 1947.

*House, Moses & Holmes* and *Horace Jewell,* for appellant.

*Moore, Burrow, Chowning & Hall,* for appellee.

HOLT, J.  Dr. Enoch Howze died testate January 6, 1944.  By the terms of his will, the validity of which is in no way questioned, he left all of his property to his widow, appellee here.  Dr. Howze and appellee were married in March, 1943.  In addition to appellee, two sisters, one of whom is the wife of appellant, Stanley T. Baugh, a Methodist minister, and two brothers survived Dr. Howze.  A very close relationship had, for many years, existed between the Baughs and Dr. Howze, and Dr. Howze's confidence in, and friendship for them, were of the highest order, and on one occasion after Dr. Howze and Mr. and Mrs. Baugh had returned from a vacation trip, which they had made together, Dr. Howze made Mrs. Baugh a present of $5,000.

In July, 1939, Dr. Howze placed in the hands of his brother-in-law, Mr. Baugh, then pastor of a Pine Bluff church, $5,000 with directions that he deposit it to Baugh's credit in a bank in that city and take care of it. In August of this same year, Dr. Howze gave Mr. Baugh another $5,000 with directions to deposit it in a Pine Bluff bank in the name of Thomas Baugh, one of Mr. Baugh's children, and take care of it for him, Dr. Howze. Mr. Baugh complied with both requests. At the time this $10,000 was entrusted to Mr. Baugh and deposited in the Pine Bluff bank, nothing was said by Dr. Howze as to its disposition other than the admonition to take care of it.

In the latter part of December, 1940, after Mr. Baugh had moved to a church in Prescott, Mr. Baugh testified that while he and Mrs. Baugh were visiting Dr. Howze, and were in his office: "A. Of course I kept wondering what Doctor Enoch wanted to do with that (meaning the $10,000). So after we moved from Pine Bluff to Prescott, in his office the last of December—I think it must have been right after Christmas—he took us back in his office again and closed the door to the outer waiting room and he said, 'I want that ten thousand dollars you hold on deposit in Pine Bluff for my brothers and sisters. I want you to take it out of the bank and put it in a lock box and hold it and deliver it to them at my death.' . . . And when he said, 'I give it to you for my brothers and sisters,' he said, 'nobody knows a thing about that, but we three,' and Mrs. Baugh, he and I were standing there. 'Nobody knows about it but we three,' and after that he cautioned about that, 'Nobody knows a thing about this, and nobody is to ever know it but we three.' "

Following these instructions from Dr. Howze, Mr. Baugh removed the $10,000 in currency from the Pine Bluff bank, and on December 22, 1941, placed it in a lock box in the Worthen bank, Little Rock. The box was procured in the names of Mr. and Mrs. Baugh.

Following the marriage of appellee and Dr. Howze in March, 1943, Dr. Howze spent several thousand dollars

in remodeling and improving his residence, and in April, 1943, Dr. Howze, according to the testimony of both Mr. and Mrs. Baugh, asked Mr. Baugh to loan him $1,000 of the $10,000 in the lock box and promised to repay it in the fall. Mr. Baugh promptly delivered this $1,000 to Dr. Howze. No note or other evidence of this transaction appears. December 12, 1943, Dr. Howze told Mrs. Baugh to have Mr. Baugh get $5,000 additional from the lock box and place it to Dr. Howze's account in a Malvern bank. Mr. Baugh, without question, immediately complied with this request, no loan being mentioned in connection with this transaction.

After the delivery of the $6,000 to Dr. Howze, there remained in the lock box $4,000, which remained in the box until Dr. Howze died, January 6, 1944, and shortly thereafter Mr. Baugh distributed this $4,000 by giving to each of Dr. Howze's sisters and two brothers $1,000.

The present action was brought by Dr. Howze's widow, appellee, against Mr. Stanley Baugh and the other appellants to recover the $4,000 and any other property that appellants might have that belonged to Dr. Howze.

From a decree in favor of appellee, Dr. Howze's widow, for $4,000 comes this appeal.

The sole question presented, say appellants, "is whether or not Dr. Enoch Howze made a gift to his brothers and sisters of $10,000 in December, 1940, when he instructed Brother Stanley T. Baugh to hold that money for them." In other words, was it a valid gift *inter vivos?*

Appellants earnestly contend that a valid gift was made. It is our view, however, that no gift was effected and that the decree of the trial court must be upheld.

The material facts, which are practically undisputed, are in effect as above detailed.

To constitute a valid gift *inter vivos* certain essential elements must be present, these include actual deliv-

ery of the subject-matter of the gift to the donee or to some one as agent or trustee for the donee, with a clear intent to make an immediate present and final gift beyond recall, and at the same time unconditionally releasing all future dominion and control by the donor over the property so delivered.

As we view the record before us, Mr. Baugh was acting as the trusted agent of Dr. Howze in caring for and handling the $10,000 in question, which had been entrusted to his care, was not the agent of the donees, and Dr. Howze never relinquished dominion and control over this money. In fact, all the alleged donees, with the exception of Mrs. Baugh, were kept in ignorance of this alleged gift until after the death of Dr. Howze. That he did not relinquish control and dominion, a necessary requisite to a completed gift, is, we think, clearly evidenced by Dr. Howze's actions in demanding, and receiving, as above noted, 60 per cent. of this $10,000 after Mr. Baugh had placed it in a lock box in the Worthen bank, and without any objections on the part of his agent, Mr. Baugh.

In *Ragan* v. *Hill,* 72 Ark. 307, 80 S. W. 150, this court in deciding whether a gift had been completed from W. M. Rees to B. C. Rees through delivery and directions to John C. Hill & Son, said: "In Thornton, on Gifts and Advancements, it is said: 'In all gifts a delivery of the thing given is essential to their validity; for although every other step be taken that is essential to the validity of a gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite, without which the gift fails, regardless of the consequences. . . . The reason for the rule . . . is obvious; it is based upon 'grounds of public policy and convenience, and to prevent mistake and imposition.' Such gifts open the door for fraud and perjury; and as these gifts are usually claimed upon parol evidence, it is difficult to meet and overthrow such claims when the alleged donor is dead, unless a delivery to the donee is made an absolute and requisite test in determining

whether or not a gift was actually consummated—not intended but consummated.' Thornton on Gifts and Advancements, pp. 105-108, and cases cited.

"In every case a delivery is necessary to constitute a gift. In this case, W. M. Rees loaned the money to John C. Hill & Son. He never parted with dominion over it in his lifetime. It was not delivered to B. C. Rees, or to anyone for him. In the language of witness John C. Hill, "it was to go" to B. C. Rees at the death of W. M. Rees. The directions of the latter (W. M. Rees) in this respect were testamentary in character, and were not effective, because not made and proved as a will."

See; also, 38 C J. S., Gifts, § 25.

The applicable rule is properly stated in *Chambers v. McCreery*, 106 Fed. 364, in this language: "A gift *inter vivos* goes into immediate effect, is absolute and irrevocable, and to render it complete there must be an actual delivery of the subject-matter of the gift—the manner of the delivery being to a great extent governed by the character of the thing delivered—but without such delivery the title does not pass. The effect of the delivery is that the donor parts, not only with the possession, but with dominion over, and control of, the property so delivered."

In 24 Am. Jur., § 30, pp. 747, 748, the text writer on the question of agency said: "While delivery may be made by an agent of the donor, delivery to the agent is not enough. The gift is not complete until there is an actual delivery to the donee or to someone for him, and until the gift is completed by delivery, the donor may reassert title to the property. Moreover, since the authority of an agent is revoked by the death of his principal, the death of the donor before the actual delivery of the property to the donee terminates the authority of the agent to make such delivery, and works a revocation of the gift"; and in 28 C. J., § 31, p. 640, we find this language: "While a delivery may be made to a third party in order that the latter may deliver the subject of the gift to the donee as agent of the donor, the gift is not

complete until there is an actual delivery to the donee, and until the gift is completed by delivery the donor can revoke the agent's authority and resume possession of the gift. As the authority of an agent is revoked by the death of his principal, the death of the donor before the actual delivery of the property to the donee terminates the authority of the agent to make such delivery, and the gift, therefore, fails for want of delivery. So, also, the delivery of property to an agent to be delivered to an intended donee after the donor's death is not sufficient to sustain a gift *inter vivos,* and such a disposition is void as being in contravention of the statute of wills.'' See, also, 38 C. J. S., Gifts, § 25.

On the question of agency, this court again said in *Newton* v. *Snyder,* 44 Ark. 42, 51 Am. Rep. 587 : ''Delivery to a third person for a donee is as effective as delivery to the donee, but delivery to an agent in the character of an agent for the giver, to perform the act or make the delivery only after the giver's death, would amount to nothing. (2 Redf. Wills, chapter 12, §§ 42, 45.)''

As indicated above, the question here simply stated is, do the facts show a gift of the $10,000 to Dr. Howze's brothers and sisters? Conceding that Dr. Howze wanted this money to go to his sisters and brothers after his death, still unless he took proper or legal steps to carry out such intention, this court cannot act for him and give legal effect to the donor's ·wishes when the donor himself has failed to comply with the essential requirements necessary to effectuate the gift.

Finding no error, the decree is affirmed.

Robins and Millwee, JJ., dissent.