NORTHPORT HEALTH SERVICES, INC., and Kristy Unkel *v.* Diane OWENS and Alisa Main

CA 02-875                                    107 S.W.3d 889

Court of Appeals of Arkansas
Division II
Opinion delivered May 28, 2003

[Petition for rehearing denied July 30, 2003.]

356

*Friday, Eldredge & Clark*, by:  *Michael S. Moore*, for appellants.

*Benson, Robinson & Wood*, by: *Brian Wood*; and *Kincaid, Horne & Daniels*, by: *Shawn Daniels*, for appellees.

TERRY CRABTREE, Judge. This is a case involving claims of defamation and wrongful discharge. A Washington County jury returned a verdict in favor of appellees and awarded damages. The trial court later awarded attorney's fees and costs. Appellants raise four points on appeal, essentially challenging the sufficiency of the evidence to support the verdict. We affirm.

Appellant Northport Health Services (Northport) operates the Fayetteville Health and Rehabilitation Center (Center), and appellant Kristy Unkel is the Director of Nursing at the Center. Appellees Diane Owens and Alisa Main are licensed practical nurses (LPNs) who worked at the Center until they were fired in April 2000, after allegations were made against them by certain certified nurse's assistants (CNAs) with whom they worked. The specific allegations were that Owens failed to chart a fall by resident Maggie Jones and that Main had verbally abused a resident and failed to give another resident pain medication after being advised by a CNA of the need for such medication. Following their termination, appellees filed suit, alleging that appellants defamed them by reporting the allegations to the state Office of Long Term Care (OLTC) and the Fayetteville Police Department. Appellees also alleged that they were wrongfully terminated in violation of public policy and appellants' own policies because appellees had made complaints to the Director of Nursing concerning improper patient care. The complaint sought compensatory and punitive damages, attorney's fees, and costs. Appellants answered, denying the allegations, asserting that they acted in good faith and that the communications to OLTC and the Fayetteville Police Department were mandated by law and, therefore, privileged. The case was tried to a jury in March 2002.

The jury returned a verdict on interrogatories and found that appellee Owens was wrongfully discharged in violation of public policy but that appellee Main was not wrongfully discharged in violation of public policy. The jury also found that appellant Unkel and other employees had caused appellees to suffer damages by publishing defamatory statements concerning each appellee, that the

statements exceeded the scope of the privilege to communicate the statements, and that the statements were not made in good faith. The jury awarded appellee Owens damages of $67,740 on the wrongful-discharge claim and $200,000 on the defamation claim. The jury awarded appellee Main damages of $65,000 on the defamation claim. The trial court entered judgment on the verdict and also awarded appellee Owens attorney's fees of $15,000 on the wrongful-discharge claim. This appeal followed.

■ In *Webb v. Bouton*, 350 Ark. 254, 85 S.W.3d 885 (2002), the supreme court explained the standard of review for determining whether there was substantial evidence to support the jury verdict:

> Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture. In determining the existence of substantial evidence, we view the evidence in the light most favorable to the party on whose behalf the judgment was entered and give it its highest probative value, taking into account all reasonable inferences deducible from it. In reviewing the evidence, the weight and value to be given the testimony of the witnesses is a matter within the exclusive province of the jury.

*Id.* at 262, 85 S.W.3d at 889 (citations omitted). *See also Sparks Reg'l Med. Ctr. v. Smith*, 63 Ark. App. 131, 976 S.W.2d 396 (1998).

Appellants' first two points concern the defamation claims. In their first point, appellants argue that they are entitled to judgment as a matter of law. Specifically, appellants argue that there was no substantial evidence that either actionable defamation occurred or that appellees suffered any damages to their reputations. In their second point, appellants argue that the evidence was insufficient to support any award of damages to either appellee.

■ First, appellants argue that there was no publication because Ark. Code Ann. § 5-28-203(a)(1)(O) (Supp. 2001) requires institutions such as it and persons such as appellant Unkel, the Director of Nursing and thus a facility administrator, to report suspected cases of abuse or neglect to the OLTC. Appellants further

argue that Ark. Code Ann. § 5-28-215 (1997) gives them immunity from suit for making such reports. Section 5-28-215 provides:

(a) Any person, official, or institution participating in good faith in the making of a report, . . . pursuant to this chapter shall have immunity from liability and suit for damages, civil or criminal, that otherwise might result by reason of such actions.

(b) The good faith of any person required to report cases of adult abuse, sexual abuse, or neglect shall be presumed.

We hold that there was a publication because "publication" occurs when the defamatory matter is communicated to someone other than the person defamed. *Navorro-Monzo v. Hughes*, 297 Ark. 444, 763 S.W.2d 635 (1989). Even though there has been a "publication," the defamatory statement may be protected by a qualified privilege. *Id.*

■ ■ Here, appellants raised the immunity or privilege issue in motions for summary judgment against each appellee. However, there is nothing in the record to indicate that the trial court ruled on the motions for summary judgment. "Qualified immunity, similar to absolute immunity, is an entitlement not to stand trial under certain circumstances. Such entitlement is an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Robinson v. Beaumont*, 291 Ark. 477, 484, 725 S.W.2d 839, 843 (1987) (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). Further, appellants could have immediately appealed the denial of a motion for summary judgment based on immunity. *Robinson v. Beaumont, supra*. Because appellants failed to pursue their motions for summary judgment and proceeded to trial, we hold that they have waived their arguments concerning immunity under Ark. Code Ann. § 5-28-215. *Robinson v. Beaumont, supra. See also Ozarks Unltd. Resources Coop., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998).

■ As their second point, appellants argue that appellees failed to prove any damage to their reputations. In order for liability to attach, there must be evidence that demonstrates a causal connection between defamatory statements made by appellants and the injury to appellees' reputations. *Ellis v. Price*, 337 Ark.

542, 990 S.W.2d 543 (1999). A plaintiff must establish actual damage to his reputation, but the showing of harm may be slight. *Id.* A plaintiff must prove that the defamatory statements have been communicated to others and that the statements have affected those relations detrimentally. *Id.* A plaintiff's testimony that his reputation was injured is generally sufficient to take the issue to the jury, *Hogue v. Ameron, Inc.*, 286 Ark. 481, 695 S.W.2d 373 (1985).

Appellants appear to be arguing that, because appellees did not prove any harm to their reputations with either the OLTC or the Fayetteville Police Department, then appellees failed to prove damages. *See Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914, 927 (1997) (Newbern, J., dissenting). We do not believe that the law is that restrictive regarding injury to a person's reputation. Here, Linda Millspaugh, a nursing home administration consultant and former director of nursing, testified that, based upon her review of the reports to the OLTC or the Fayetteville Police Department, she would not hire either appellee and that the reports would hurt the appellees' chances of finding employment in the nursing home industry. While appellee Main testified that, following her termination, she was able to obtain subsequent employment as an LPN in the health care field, she also testified that, because of her termination, she doubted herself and her abilities as a nurse. She also testified that she did not believe that she would recover emotionally from the termination and that she had been treated for depression. Appellee Owens testified that she did not receive any responses to applications containing the explanation for her termination that she had faxed to prospective employers. She also testified that she was humiliated by the allegations and that she suffered from depression.

Appellants also appear to argue that the amount of the damage award is excessive. When an award of damages is alleged on appeal to be excessive, we review the proof and all reasonable inferences most favorably to the appellees and determine whether the verdict is so great as to shock our conscience or demonstrate passion or prejudice on the part of the jury. *United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998). While there must be proof of actual damage to a person's reputation, *id.*, there is

no requirement that specific evidence assigning a dollar value to the injury must exist. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). *See also Liles v. Matthews*, 268 Ark. 980, 598 S.W.2d 755 (Ark. App. 1980). Further, the amount of proof required is slight. *Ellis v. Price, supra.* We hold that the above evidence was sufficient to support the jury's verdict of damage to appellees' reputations and that the award of damages was not so great as to shock the conscience of the court. We affirm on this point.

For their third and fourth points, appellants address the verdict in favor of appellee Owens on her wrongful-discharge claim. Specifically, appellants argue in their third point that they are entitled to judgment as a matter of law on the claim. In the fourth point, appellants argue that the verdict amount is excessive and clearly against the weight of the evidence.

The well-established rule is that, when an employee's employment is for an indefinite term, either party may terminate the relationship without cause or at will. *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988).

In *Sterling Drug*, the court stated:

> [W]e have no hesitancy in concluding that Arkansas law would recognize at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are: (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.

*Id.* at 245, 743 S.W.2d at 283. In *Sterling Drug*, the supreme court also recognized the public policy exception to the employment-at-will doctrine when it stated:

> [A]n employer should not have an absolute and unfettered right to terminate an employee for an act done for the good of the public. Therefore, we hold that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. This is a limited exception to the employment-at-will doctrine. It is not meant to protect merely private or proprietary interests.

*Id.* at 249, 743 S.W.2d at 385 (citations omitted). In finding a violation of public policy, the court stated that "it is generally recognized that the public policy of a state is found in its constitution and statutes." *Id.*

■ Appellants argue that there could be no wrongful discharge because Owens did not call OLTC until after her termination. However, the trial court instructed the jury that it could find a wrongful discharge if appellees were discharged for filing or threatening to file reports of patient abuse with OLTC or by making internal complaints of patient abuse or neglect. First, section 5-28-203 requires nurses or facility employees to report suspected cases of patient abuse or neglect to the facility administration. Further, Ark. Code Ann. § 20-10-1007(a) (2000) provides that "[n]o long-term care facility owner, administrator, . . . shall discriminate, retaliate, or seek reprisal in any manner against a resident or employee of a long-term care facility who has initiated or participated in any proceeding provided in this subchapter." The jury could have found that Owens was wrongfully terminated because she told Unkel some time prior to her suspension that the CNAs were leaving her no choice but to make a report to the OLTC and that Owens had made several reports concerning the CNAs to Unkel. This would have been in violation of section 20-10-1007(a). We affirm on this point.

■ In their fourth point, appellants argue that the verdict in favor of appellee Owens on the wrongful-discharge claim is excessive. Appellants cite no authority for their argument on this point. Our courts have said on numerous occasions that we will not consider an issue if the appellant has failed to cite any convincing legal authority in support of its argument. *Craft v. City of Fort Smith,* 335 Ark. 417, 984 S.W.2d 22 (1998); *Porter v. Harshfield,* 329 Ark. 130, 948 S.W.2d 83 (1997); *Miller v. State,* 328 Ark. 121, 942 S.W.2d 825 (1997). Appellants' failure to cite authority or make a convincing argument is sufficient reason for affirmance of the trial court's judgment on this point. *Ellis v. Price, supra.*

Affirmed.

GRIFFEN and VAUGHT, JJ., agree.