KEN'S DISCOUNT BUILDING MATERIALS, INC. *v.*
Steven MEEKS

CA 05–208                                                    233 S.W.3d 176

Court of Appeals of Arkansas
Opinion delivered March 22, 2006

[Rehearing denied April 26, 2006.]

*Barber, McCaskill, Jones & Hale, P.A.*, by: *R. Kenny McCulloch*, for appellant.

*Robert L. Depper, Jr.*, for appellee.

Terry Crabtree, Judge. Appellant Ken's Discount Building Materials (KDBM) brings this appeal from a jury verdict in a premises-liability case. The jury awarded appellee Steven Meeks judgment against KDBM for $10,000. KDBM raises four points on appeal. We agree with KDBM's first two points and reverse and dismiss without discussing its third and fourth points.

In May 1999, while still a minor, Meeks was riding his bicycle on a sidewalk in El Dorado when he struck the horizontal crossbar of a sign in front of KDBM's business, sustaining injuries to his face, mouth, and jaw. Meeks filed suit, alleging that KDBM was negligent in maintaining a dangerous condition on its property

and in failing to warn the public of that danger. KDBM denied the material allegations of the complaint. KDBM also asserted defenses of comparative fault and that the sign's crossbar was an open and obvious danger. Meeks subsequently filed an amendment to his complaint, alleging that KDBM's conduct in maintaining the sign was willful and wanton.

Kenneth Blackmon, the owner of KDBM, was called as an adverse witness by Meeks and testified that his business was located across the street from a football stadium and a boys and girls club. He stated that he was not aware that Meeks was on the property and did not witness the accident. He described the crossbar as being five or six feet high between the two legs of the sign. He also stated that, after the accident, he noticed blood on the south side of the sign's crossbar. According to Blackmon, there was a four-to-six-inch ledge abutment, as well as the remnants of an old sign base, blocking access to the south side of the sign at issue. The ledge abutment and sign bases were on KDBM's property at the time of the accident, he said. He stated that the sign's legs were approximately five feet apart with the eastern leg of the sign base approximately five inches off KDBM property and seven feet from the street. Blackmon asserted that the sidewalk was wide enough for two people to ride bicycles side-by-side without striking the sign pole. He also stated that, at the time of the accident, he had the ability to remove the abutment and old sign base from his property. He further stated that he could have put reflective tape across the crossbar if he thought it necessary.

Blackmon testified that it was not uncommon for him to see children riding bicycles on the sidewalk in front of his store, adding that he would tell bicyclists to stay on the sidewalk instead of his parking lot. He also stated that he did not go to the boys and girls club across the street to ask that children not ride their bicycles on the premises. Blackmon stated that he never thought a person would ride a bicycle between the sign's legs. He stated that there had not been a similar accident at his property and that he did not consider the sign dangerous to pedestrians or bicycle riders. He also denied doing anything to intentionally or willfully injure anyone.

Appellee Steven Meeks testified that he was injured while riding his bicycle with his friend William Boyer. He stated that they were traveling in a northerly direction on the sidewalk when he hit the sign's crossbar at KDBM's property. He could not remember why he was traveling between the legs of the sign. Meeks stated that he was aware of the sign from previous passings

but never saw the crossbar or the support posts. He also did not recall racing with Boyer and stated that Boyer had gone to the left (or western) side of the sign's legs. Meeks also stated that he and Boyer were not going to do any business at KDBM and that, to his knowledge, no one at KDBM knew he or Boyer were on the property until the accident occurred.

William Boyer testified that, at the time of the accident, he and Meeks were riding down the sidewalk with himself in the lead. He realized that Meeks was somewhat behind him and turned around and saw that an accident happened. He stated that he was familiar with the KDBM sign. He stated that he rode to the left of the sign and did not travel to the right of the sign on the sidewalk because he did not want to take a chance of coming close to a car. He stated that, when he went around the sign, he was on KDBM property. Boyer stated that he could not recall whether he and Meeks had been racing that day or not but admitted that it was possible that they had been racing. He could not recall whether Meeks told him sometime after the accident that he (Meeks) was trying to jump a ramp or something between the sign. He also stated that he did not think that it was a very smart thing to try to ride or ramp between the two poles.

At the close of Meeks's case and again at the close of all of the evidence, KDBM made motions for directed verdicts, which were denied. The bases for the motions were that Meeks was a trespasser and there was no proof of willful or wanton conduct on KDBM's part. KDBM further argued that the crossbar was open and obvious and, therefore, there was no duty to warn. In denying the motion, the trial court noted that, although there was no evidence that KDBM acted intentionally, it was a close question of whether KDBM acted with conscious disregard for the safety of others because there was evidence that KDBM knew that children were sometimes present on the property.

Nine members of the jury agreed on a verdict in favor of Meeks and awarded him $10,000. The verdict was reduced to judgment. This appeal timely followed.

KDBM raises four points on appeal: that there was no substantial evidence to support the jury's verdict; that the trial court erred in failing to grant its motion for a directed verdict; that the trial court erred in instructing the jury; and that the trial court erred in allowing certain photographs to be admitted into evidence. We find the first two points to be dispositive and pretermit discussion of KDBM's third and fourth points.

A directed-verdict motion is a challenge to the sufficiency of the evidence, and when reviewing the denial of a motion for a directed verdict, this court determines whether the jury's verdict is supported by substantial evidence. *Superior Fed. Bank v. Mackey*, 84 Ark. App. 1, 129 S.W.3d 324 (2003). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without having to resort to speculation or conjecture. *Id.* When determining the sufficiency of the evidence, this court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* A motion for a directed verdict should be denied when there is a conflict in the evidence or when the evidence is such that fair-minded people might reach different conclusions. *Fayetteville Diagnostic Clinic, Ltd. v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001). Under those circumstances, a jury question is presented and a directed verdict is inappropriate. *Id.* It is not this court's province to try issues of fact; we simply examine the record to determine if there is substantial evidence to support the jury verdict. *Id.* With these standards in mind, we discuss KDBM's first and second points together because both points assert that there is no substantial evidence to support the verdict.

The law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached. *Young v. Paxton*, 316 Ark. 655, 873 S.W.2d 546 (1994); *Earnest v. Joe Works Chevrolet, Inc.*, 295 Ark. 90, 746 S.W.2d 554 (1988); W. Page Keeton, et al., *Prosser & Keaton on the Law of Torts* § 30 at 164 (5th ed. 1984). KDBM devotes much of its argument to the assertion that Meeks was a trespasser while Meeks argues that he was a licensee. Irrespective of Meeks's status as trespasser or licensee, there is nothing in the proof submitted to indicate that KDBM breached a duty of care owed to Meeks. A property owner owes both a trespasser and a licensee the duty to refrain from causing him injury by willful or wanton conduct. *Aluminum Co. of Am. v. Guthrie*, 303 Ark. 177, 793 S.W.2d 785 (1990). To constitute willful or wanton conduct, there must be a course of action that shows a deliberate intention to harm or that shows utter indifference to, or conscious disregard of, the safety of others. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003); *Lively v. Libbey Mem'l Physical Med. Ctr., Inc.*, 311 Ark. 41, 841 S.W.2d 609 (1992); *Maneth v. Tucker*, 72 Ark. App. 141, 34 S.W.3d 755 (2000). A person acts willfully and wantonly when he knows or should know in the light of surrounding circumstances that his conduct

will naturally and probably result in bodily harm and continues such conduct in reckless disregard of the consequences. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). Further, KDBM owed no duty to warn of obvious or patent dangers. *Maneth, supra.* There is no dispute that the crossbar was an obvious danger.

■ We cannot find any meaningful way to distinguish *Guthrie* from the present case. There is no evidence that KDBM acted willfully or wantonly to cause Meeks's injury. There was no evidence presented that KDBM knew that people were regularly going between the sign posts. Kenneth Blackmon testified that he did not know of anyone riding between the legs of the sign prior to the accident. Although there was evidence that children would periodically go onto the KDBM parking lot, Blackmon testified that he would ask children to ride on the sidewalk and not on his parking lot. The fact that KDBM did not put reflective tape on the sign or take other steps does not aid Meeks because KDBM owed no duty to Meeks as either a licensee or a trespasser to inspect the premises to be certain they are safe. *See Webb v. Pearson*, 244 Ark. 109, 424 S.W.2d 145 (1968).

There is no evidence that KDBM breached any duty owed to Meeks. Therefore, we must reverse and dismiss.

Reversed and dismissed.

BIRD and GLOVER, JJ., agree.