Joyce MILLER, Executrix in the Matter of the Estate of Otha
Farris Tackett, Deceased *v.* Mike COTHRAN, Personal
Representative for the Estate of Judean Tackett, Deceased

CA 07-869                                           280 S.W.3d 580

Court of Appeals of Arkansas
Opinion delivered March 19, 2008

*T. David Carruth*, for appellant.

*Davis & Associates, P.A.*, by: *Charles E. Davis*, for appellee.

D.P. MARSHALL JR., Judge. Otha Tackett leased his salvage yard in 2002 to Doyle, Tommy, and Bruce Meadors for $800.00 a month for ten years. The lease provided that:

> The terms and provisions of this lease shall inure to the benefit of the heirs and devises of the parties and, in particular, it is agreed that in the event of lessors death, the moneys due and payable hereunder shall be paid to the lessors wife, Judeane Tackett.

This appeal is a dispute between Otha's estate and Judean's estate about the enforceability of this contract provision.

## I.

Family circumstances frame the dispute. Both Otha and Judean had been married before and had children from those marriages. The year before they married each other in 1975, Otha executed a will leaving his entire estate to his four children. Otha and Judean made a prenuptial agreement, each renouncing any claim to the property that the other brought into their marriage. Their attached property schedules reflect that, while Otha owned several tracts of real estate and had money in the bank, Judean owned nothing.

Starting in 2002, the Meadors paid the monthly rent to Otha for the salvage yard. Otha died in July 2006. The Meadors then started paying Judean the rent. Judean and Otha's estate — being administered by one of his children for the benefit of herself and her siblings pursuant to the pre-marriage will — disagreed about who was entitled to the rent paid after Otha's death. Starting in December 2006, the rent went into the registry of the circuit court. Then Judean died in March 2007. Her estate took her place in this litigation.

The circuit court agreed with Judean's estate that "the provision is clear. It is directing Meadors, Mr. Tackett says, if I die you pay that money to my spouse. There is not any way to interpret it other than that." The court ruled further that "that provision goes to the estate of Mrs. Tackett, now, she's deceased." The court eventually filed an order reflecting its bench ruling. Otha's estate appeals. We review the question of law presented in this probate case *de novo*. *Devine v. Martens*, 371 Ark. 60, 65, 263 S.W.3d 515, 520 (2007).

## II.

We agree with the circuit court that the lease is clear about Otha's intentions for any rent due after his death. We must reverse nonetheless because precedent makes this clear provision unenforceable. *E.g., Coley v. English,* 235 Ark. 215, 357 S.W.2d 529 (1962); *Levine v. Newlander,* 235 Ark. 942, 362 S.W.2d 698 (1962); *Baugh v. Howze,* 211 Ark. 222, 199 S.W.2d 940 (1947); *Ragan v. Hill,* 72 Ark. 307, 80 S.W. 150 (1904). These cases arise on varying facts: *Ragan* involved a note; *Baugh* involved cash; *Coley* involved a real-estate contract; and *Levine* involved a deed. But in each case, like Otha, the owner intended and attempted to make an *inter vivos* gift of a future interest. In each case, that effort failed as a matter of law because no present interest was conveyed. Otha's attempt in this lease to provide Judean monthly income after his death likewise fails.[1]

There is reason behind the rule. To avoid the opportunities for fraud and evidentiary difficulties, a gift *inter vivos* must be consummated by actual delivery to the donee, with the donor releasing all dominion in the property beyond recall. *Baugh,* 211 Ark. at 225-28, 199 S.W.2d at 941-43. Alternatively, to give a future interest, the owner must make a valid will with all testamentary formalities, thereby conveying the interest at the owner's death. *Coley,* 235 Ark. at 217-18, 357 S.W.2d at 531. In this case, Otha neither consummated an *inter vivos* gift nor followed the testamentary formalities necessary to amend his will by codicil.

*Coley* is the closest precedent. Ann Coley sold real estate on terms. She and the buyers agreed that, if she died before they paid the entire purchase price, then they should pay her husband's nephew the balance in her stead. 235 Ark. at 215, 357 S.W.2d at

---

[1] Though Otha's estate cast its main argument for reversal in its opening brief in terms of a failed assignment, the substance of that argument was that Otha made no immediate and complete delivery to Judean of the right to rent from the lease. Judean's estate recognized the core issue — the enforceability of the right to any rent due after Otha's death. Judean's estate responded with a full counter-argument about *inter vivos* gifts and third-party beneficiaries, citing *Coley* and other relevant authorities. And Otha's estate replied on those terms. The doctrinal labels are not controlling; the substance of the argument made is. "We must think things not words[.]" Oliver Wendell Holmes Jr., *Law in Science and Science in Law,* 12 Harv. L. Rev. 443, 460 (1899). All the parties having fully briefed the dispositive issue, we may and do decide it. *Compare Rymor Builders, Inc. v. Tanglewood Plumbing Co.,* 100 Ark. App. 141, 145-46, 265 S.W.3d 151, 153-54 (2007).

529-30. As Judean's estate does in this case, the nephew contended that he was a third-party beneficiary and the fact that his benefit under the contract was postponed until the death of one party to the contract should not make any legal difference. 235 Ark. at 216, 357 S.W.2d at 530.

The supreme court squarely rejected the nephew's argument. The court's holding binds us, and its words explain the decision in *Coley* and in this case.

> In the case before us now, [Otha] retained full control over the contract and, had [he] lived, [he] would have been the sole beneficiary or recipient of the full consideration due on the contract. At no point does [Judean] show an actual or constructive intent on the part of [Otha] to relinquish such control of the contract as would cause a presumption that [Judean] was entitled to anything until [Otha's] death. The terms of the contract clearly state that [Judean] was to receive nothing until the death of [Otha], and then only such amount (if any) as might be remaining due upon the contract. This provision of the contract clearly shows an intent on the part of [Otha] to make a testamentary disposition of property contrary to the solemn requirements of a will. From the clear language of the contract there is no inference of an intent on the part of [Otha] to convey a present interest in the contract to [Judean] as would constitute a valid gift *inter vivos*.

235 Ark. at 217-18, 357 S.W.2d at 531.

■ Pointing to more recent Arkansas cases, Judean's estate argues that we should affirm the circuit court's decision. These cases, however, arise in areas where statutes have supplanted the common law. A depositor can give a current or future interest in her bank account by designating a joint tenant or by making a POD — "pay on death" — designation. *Baker v. Bank of Northeast Arkansas*, 271 Ark. 948, 950-52, 611 S.W.2d 783, 784-85 (Ark. App. 1981); Ark. Code Ann. §§ 23-32-207 & 23-37-502 (Repl. 2000). If a joint tenancy is created, the gift has been completed; if a POD designation is made, the gift would not be valid under the common law but is valid under the statute. Likewise, a person entitled to insurance proceeds may, instead of taking a lump sum, accept periodic payments and designate another individual to receive any balance unpaid at the recipient's death. *Wasson v. Pyron*, 242 Ark. 518, 520-21, 414 S.W.2d 391, 392-93 (1967); Ark. Code Ann. § 23-81-116 (Repl. 2004). These statute-based precedents do not undermine *Coley* and similar cases.

Judean's estate also argues from out-of-state decisions and learned treatises that support enforcing the disputed provision of the salvage yard lease. *E.g., Roberts v. Ellis,* 229 Or. 609, 368 P.2d 342 (1962); 13 Williston on Contracts §§ 37:7-37:10 (4th ed. 2000). The Restatement (Second) of Contracts § 302(1)(b) (1981) adds further support. Under these authorities, Judean was Otha's intended third-party beneficiary of rent due after his death, and the law should recognize and enforce her right notwithstanding the postponed vesting. We recognize the wisdom of this law. But we are bound by *Coley* and like precedents. Only our supreme court can say whether the now-ready availability of POD designations, insurance products, and other legally effective transfers of future and contingent interests in property has so eroded the line of cases exemplified by *Coley* that our common law has changed.

Otha's estate makes other arguments for reversal, but we do not reach them because we reverse and remand on the authority of *Coley*.

HEFFLEY and BAKER, JJ., agree.