Alan PRENDERGAST *v.* Leo and Kathleen CRAFT,
Gayle Lyn Rutledge, Missouri Walnut, LLC, and Wyatt Williams
d/b/a Long Valley Timber

CA 06-1282                                              284 S.W.3d 104

Court of Appeals of Arkansas
Opinion delivered May 14, 2008

*Penix and Taylor*, by: *Stephen L. Taylor*, for appellant.

*Hixson & Daniels, PLLC*, by: *Kenneth S. Hixson*, for appellees Leo and Kathleen Craft and Gayle Lyn Rutledge.

*The Newman Law Firm*, by: *Sue Ann v.* Newman, for appellee Missouri Walnut, LLC.

*Taylor Law Firm*, by: *W.H. Taylor*, for appellee Wyatt Williams d/b/a Long Valley Timber.

JOHN B. ROBBINS, Judge. Appellant Alan Prendergast devised a scheme to cut and sell timber from lands owned by his

sisters, appellees Kathleen Craft and Gayle Rutledge.[1] However, he did not have permission to do so. Prendergast contracted with appellee Wyatt Williams, d/b/a Long Valley Timber, to cut the timber. Williams, in turn, contracted to sell the harvested logs to appellee Missouri Walnut, LLC. Once the scheme was exposed, two suits, including cross-claims and counterclaims, were filed and later consolidated. A Benton County jury found Prendergast liable to each of the appellees and ordered him to pay $43,276.45 in compensatory damages and $85,000 in punitive damages to Missouri Walnut; $48,276.45 to the Crafts; and $15,000 in compensatory damages and $35,000 in punitive damages to Williams. The damages awarded to the Crafts were trebled pursuant to Ark. Code Ann. § 18-60-102 (Repl. 2003). Prendergast raises three points on appeal, challenging the jury instructions on the measure of the Crafts' damages, the punitive damages awards to both Missouri Walnut and Williams, as well as the compensatory award to Williams. We affirm.

## I. Facts and Proceedings in Circuit Court

Alan Prendergast entered into an agreement with Wyatt Williams under the terms of which Williams was to harvest certain walnut trees from property Prendergast represented was owned by him. Pursuant to this agreement, Prendergast signed a timber deed to Williams on January 21, 2005. This property was actually owned by the Crafts, and Prendergast later testified that he did not have the authority to sign the timber deed. Williams cut and harvested the walnut logs pursuant to their agreement. On January 26, 2005, Williams entered into a contract for Missouri Walnut to purchase the 808 walnut logs that had already been cut, set out, and identified. The purchase price was $43,276.45. Missouri Walnut paid for the logs on January 26, 2005. One check was payable to Williams in the amount of $18,310.58. The second payment was made to Prendergast in the amount of $24,965.87. Missouri Walnut did not have any direct contact with Prendergast, relying on communications from Williams concerning Prendergast's sale of the logs.

Subsequent to Missouri Walnut's payment for the logs, the Crafts informed Missouri Walnut that Prendergast did not have

---

[1] Craft's husband, Leo Craft, is also an appellee. We will collectively refer to these appellees as the Crafts.

any ownership interest in the property and did not have their consent to the cutting or sale of the logs. The Crafts intended to sell the logs to other timber companies for approximately $40,000.

Neither Missouri Walnut nor Williams researched the Benton County real estate records to determine the ownership of the real estate prior to issuing the two checks to Prendergast and Williams. However, there was testimony from Williams and others in the timber industry that industry standards did not require such a title search.

On March 2, 2005, Missouri Walnut filed a complaint in replevin against the Crafts asserting that it was a "good faith purchaser" who had acquired good title to the 808 logs and was seeking to recover possession of the logs Williams had cut. Missouri Walnut later amended its complaint to seek, in the alternative, damages for the value of the logs. The Crafts filed an answer and counterclaim in which they generally denied the allegations of the complaint and sought treble damages for the injury to their land.

On March 11, 2005, Missouri Walnut filed a companion suit against Prendergast and Williams, asserting breach-of-contract claims against each and a fraud claim against Prendergast. The complaint sought damages in the amount of $43,276.45 (the amount Missouri Walnut paid for the logs) against each defendant. Missouri Walnut also asserted that Prendergast should be liable for punitive damages for the fraud claim. Williams and Prendergast each denied the material allegations of the complaint. In addition, Williams filed a cross-claim against Prendergast, seeking judgment for any amounts Williams might be ordered to pay Missouri Walnut, together with punitive damages. On May 8, 2006, Prendergast filed a cross-complaint against Williams, alleging that Williams was negligent in not waiting until Prendergast had obtained his sisters' permission before cutting the timber. The cross-complaint sought judgment for any amount Prendergast might be ordered to pay. The circuit court consolidated both cases for trial.

On July 8, 2005, the Crafts filed a cross-claim against Williams and Prendergast, alleging that Prendergast and Williams had trespassed across their lands and destroyed timber without permission. The cross-complaint sought damages of $43,276.45 for the value of the timber, together with the $5,000 cost of restoring the land.

The case was tried to a jury over two days. The jury returned a verdict by answering a series of interrogatories. The interrogatories were as follows:

INTERROGATORY NO. 1 As between Missouri Walnut, LLC and Alan Prendergast, we find in favor of Alan Prendergast. ANSWER: Not answered

INTERROGATORY NO. 2 As between Missouri Walnut, LLC and Alan Prendergast, we find Alan Prendergast liable to Missouri Walnut, LLC in the amount of $43,276.45. This interrogatory was signed by the foreman.

INTERROGATORY NO. 3 As between Missouri Walnut, LLC and Wyatt Williams, d/b/a Long Valley Timber, we find in favor of Wyatt Williams, d/b/a Long Valley Timber. This interrogatory was signed by the foreman.

INTERROGATORY NO. 4 As between Missouri Walnut, LLC and Wyatt Williams, d/b/a Long Valley Timber, we find Wyatt Williams, d/b/a Long Valley Timber, liable to Missouri Walnut, LLC in the amount of $_____. ANSWER: Not answered

INTERROGATORY NO. 5 As between Leo and Kathleen Craft and Gale Lyn Rutledge and Alan Prendergast, we find in favor of Alan Prendergast. ANSWER: Not answered

INTERROGATORY NO. 6 As between Leo and Kathleen Craft and Gale Lyn Rutledge and Alan Prendergast, we find Alan Prendergast liable to Leo and Kathleen Craft and Gale Lyn Rutledge in the amount of $48,276.45. This interrogatory was signed by the foreman.

INTERROGATORY NO. 7 As between Leo and Kathleen Craft and Gale Lyn Rutledge and Wyatt Williams, d/b/a Long Valley Timber, we find in favor of Wyatt Williams, d/b/a Long Valley Timber. This interrogatory was signed by nine jurors.

INTERROGATORY NO. 8 As between Leo and Kathleen Craft and Gale Lyn Rutledge and Wyatt Williams, d/b/a Long Valley Timber, we find Wyatt Williams, d/b/a Long Valley Timber, liable to Leo and Kathleen Craft and Gale Lyn Rutledge in the amount of $_____. ANSWER: Not answered

INTERROGATORY NO. 9 As between Alan Prendergast and Wyatt Williams, d/b/a Long Valley Timber, we find in favor of Wyatt Williams, d/b/a Long Valley Timber. This interrogatory was signed by the foreman.

INTERROGATORY NO. 10 As between Wyatt Williams, d/b/a Long Valley Timber, and Alan Prendergast, we find Alan Prendergast liable to Wyatt Williams, d/b/a Long Valley Timber, in the amount of $15,000.00. This interrogatory was signed by nine jurors.

INTERROGATORY NO. 11 As between Wyatt Williams, d/b/a Long Valley Timber, and Alan Prendergast, we find in favor of Alan Prendergast. ANSWER: Not answered

INTERROGATORY NO. 12 As between Alan Prendergast and Wyatt Williams, d/b/a Long Valley Timber, we find Wyatt Williams, d/b/a Long Valley Timber, liable to Alan Prendergast in the amount of $_____. ANSWER: Not answered

INTERROGATORY NO. 13 Do you find Wyatt Williams, d/b/a Long Valley Timber, is entitled to recover punitive damages from Alan Prendergast? ANSWER: Yes This interrogatory was signed by ten jurors.

INTERROGATORY NO. 14 If your answer to Interrogatory No. 13 is yes, state the amount of punitive damages which Wyatt Williams, d/b/a Long Valley Timber, should recover from Alan Prendergast. ANSWER: $35,000.00 This interrogatory was signed by ten jurors.

INTERROGATORY NO. 15 Do you find that Missouri Walnut LLC is entitled to recover punitive damages from Alan Prendergast? ANSWER: Yes This interrogatory was signed by ten jurors.

INTERROGATORY NO. 16 If your answer to Interrogatory No. 15 is yes, state the amount of punitive damages which Missouri Walnut, LLC should recover from Alan Prendergast. ANSWER: $85,000.00 This interrogatory was signed by ten jurors.

Pursuant to agreement of the parties, the circuit court then determined that Prendergast was guilty of willful misconduct so that the

damages awarded to the Crafts should be trebled pursuant to Ark. Code Ann. § 18-60-102. The court reduced the award to the Crafts by $20,005, the amount a third party offered to pay for the logs. Judgment was entered accordingly on June 1, 2006. Prendergast filed a motion for new trial and a motion for judgment notwithstanding the verdict on June 12, 2006, alleging that he was entitled to a new trial to reduce the excessive damages award and to adjust the jury's error in the assessment of damages; that the verdicts were clearly against the preponderance of the evidence; and that the jury was improperly instructed as to the measure of damages. The motions were deemed denied and this appeal followed.[2]

## II. Arguments on Appeal

### A. Measure of damages

Prendergast first argues that the circuit court erred in refusing his proffered instruction taken from this court's decision in *King v. Powell*, 85 Ark. App. 212, 148 S.W.3d 792 (2004), as to the measure of damages. It is well settled that this court will not reverse a circuit court's refusal to give a proffered jury instruction unless there was an abuse of discretion. *Williams v. First Unum Life Ins. Co.*, 358 Ark. 224, 188 S.W.3d 908 (2004). Moreover, it is not error for the circuit court to refuse a proffered jury instruction when the stated matter is correctly covered by other instructions. *Id.*

In *King*, the jury was instructed as follows:

> If the answer to an interrogatory requires you to assess damages against Mr. Clay King in favor of Linda Powell, you will do so in the following manner:
>
> 1. If you find that Ms. Powell's intended use of the damaged or destroyed trees was for ornamental or shade purposes, then you will award damages equal to the value of the damaged or destroyed trees, if any, plus the cost of replacing stone or soil displaced or removed, if any.

---

[2] The circuit court awarded Missouri Walnut $15,406.21 in attorney's fees in a subsequent order. Prendergast did not appeal from the fee award.

> 2. Otherwise, you will award damages equal to the difference in the fair market value of Ms. Powell's property before and after the trespass.

85 Ark. App. at 220-21, 148 S.W.3d at 797. This court held that this instruction was a correct statement of the law. In the present case, the jury was instructed as follows:

> If an interrogatory requires you to assess the damage to timber and lands belonging to Leo Craft, Kathleen Craft, and Gale Rutledge, you must then fix the amount of money which will reasonably and fairly compensate them for the following elements of damage:
>
> First, the fair market value of the timber cut.
>
> Second, the reasonable expense of necessary repairs to any property damaged.

Prendergast objected to the instruction given by the circuit court as not being a correct statement of the law and proffered an instruction based on *King*.

Prendergast's argument fails to acknowledge that there could be other measures of damages than that provided for in *King*. In *Stoner v. Houston*, 265 Ark. 928, 582 S.W.2d 28 (1979), the supreme court noted that there were two measures of damages in actions brought under section 18-60-102 — the value of the timber or the damage to the market value of the land. Similar instructions were given in *Jackson v. Pitts*, 93 Ark. App. 466, 220 S.W.3d 265 (2005), and *Auger Timber Co. v. Jiles*, 75 Ark. App. 179, 56 S.W.3d 386 (2001), where this court noted that the market value of the timber was one of two possible measures of damages.

Prendergast concedes that the Crafts can recover the value of the timber, regardless of the use they make of their land, by suing for conversion. That is, in essence, what the Crafts did because, under section 18-60-102, a party can recover either the value of the timber (not just the value of the trees as shade trees) or the diminution in the market value of the land. *Revels v. Knighton*, 305 Ark. 109, 805 S.W.2d 649 (1991); *Stoner, supra*. As noted above, it is not error for a circuit court to refuse to give a proffered jury instruction where the stated matter is correctly covered by other instructions. The circuit court's instruction as to the fair

market value of the timber as being a measure of the Crafts' damages was a correct statement of the law. It also covered the area sought to be covered by the proffered instruction. Therefore, we cannot say that the circuit court abused its discretion in not giving Prendergast's instruction based on *King v. Powell.*

### B. Punitive damages

Prendergast argues that the punitive-damages awards to Missouri Walnut and to Wyatt Williams should be reversed because there is insufficient evidence to support the awards and because they are the result of passion or prejudice by the jury.

■ Prendergast is procedurally barred from raising the first argument. He made no directed verdict motion to dismiss either Missouri Walnut's or Williams's claim for punitive damages, nor did he object to the jury being instructed on punitive damages. The failure to preserve the issue at one of these stages precludes Prendergast from now raising the issue on appeal. *Superior Fed. Bank v. Mackey,* 84 Ark. App. 1, 129 S.W.3d 324 (2003). The first objection appeared in his posttrial motion.

However, the same does not hold true for Prendergast's argument that the punitive-damages awards were excessive, even though that argument was also made for the first time in the posttrial motion. Obviously, a party is unaware of the excessive nature of a verdict until that verdict is rendered. We therefore consider the merits of this argument.

■ Where the argument on appeal is that the damages are excessive as a matter of state law, we review the proof and all reasonable inferences in the light most favorable to the appellees, and we determine whether the verdict is so great as to shock the conscience of this court or to demonstrate passion or prejudice on the part of the trier of fact. *Calvary Christian Sch., Inc. v. Huffstuttler,* 367 Ark. 117, 238 S.W.3d 58 (2006). When reviewing an award of punitive damages, we consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *Id.*

Here, the awards do not shock the conscience of the court. Prendergast engaged in a fraudulent scheme to sell timber that he did not own from property owned by his sisters. This involved

lying to Williams about the ownership of the timber, and doing so with knowledge that Williams would be selling the logs on to a mill. Prendergast testified that he knew that he did not own the land or the timber. Also, when confronted by Missouri Walnut, Prendergast refused the request to refund the money paid to him. Instead, he deposited the funds into his account and used them for gambling and to take a trip to Hawaii. Prendergast does not identify the evidence that he claims demonstrates that the punitive damages are the result of passion or prejudice. This court may not substitute its judgment for the jury's when there is a basis in the evidence for the award and when there is no evidence, appropriately objected to, which tends to create passion or prejudice. *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 120 S.W.3d 61 (2003).

Prendergast sets out some of the elements required for a due process challenge to the punitive-damages awards; however, neither in the trial court nor in his appeal before us does he specifically make a constitutional argument. Therefore, we need not address the constitutional factors.

## C. Compensatory damages to Williams

Prendergast argues that the circuit court erred in failing to direct a verdict on Williams's claim against him. A directed-verdict motion is a challenge to the sufficiency of the evidence, and when reviewing the denial of a motion for a directed verdict, this court determines whether the jury's verdict is supported by substantial evidence. *Ken's Discount Bldg. Materials, Inc. v. Meeks*, 95 Ark. App. 37, 233 S.W.3d 176 (2006). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without having to resort to speculation or conjecture. *Id.* When determining the sufficiency of the evidence, this court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.*

In this case, the jury was instructed that Williams had brought a claim for deceit against Prendergast and the elements of that claim. The only objection Prendergast made was to request a jury instruction on constructive notice that the circuit court rejected. Williams presented evidence that he suffered a loss of business related to Prendergast's action. In the year prior to the transaction with Prendergast, Williams had approximately

$300,000 in sales of walnut logs but, since that transaction, he had only $130,000 to $150,000 in sales. He attributed the decline in sales to the adverse publicity caused by Prendergast. By not objecting to this testimony, Prendergast implicitly consented to the issue being tried. *See Neste Polyester, Inc. v. Burnett*, 92 Ark. App. 413, 214 S.W.3d 882 (2005). The fact that Williams did not have tax returns or other evidence to corroborate his testimony does not make his testimony that he suffered a loss any less substantial because the lack of corroboration goes to the weight to be given to the testimony, a matter within the sole province of the jury. *See JAG Consulting v. Eubanks*, 77 Ark. App. 232, 72 S.W.3d 549 (2002).

Affirmed.

PITTMAN, C.J., BIRD, GLOVER, and HEFFLEY, JJ., agree.

GRIFFEN, J., concurs.

HART and BAKER, JJ., dissent.

WENDELL L. GRIFFEN, Judge, concurring. Because appellant failed to challenge the submission of punitive damages to the jury in his motions for directed verdict below, I reluctantly vote to affirm the punitive damage awards in favor of Wyatt Williams and Missouri Walnut. I share Judge Hart's chagrin that the jury awarded punitive damages to Williams and Missouri Walnut, as they were, at the very least, enablers of Prendergast. Had the punitive damages claim been properly challenged at trial, I would have voted to reverse it.

I believe that punitive damage awards serve a legitimate purpose in the law and recognize that a vote to reverse the awards to Williams and Missouri Walnut could be viewed as injecting the unpled issue of comparative fault into the case. Nevertheless, I think that if Williams and Missouri Walnut were somehow victimized, their plight resulted from having disregarded the responsibility to verify that Prendergast was authorized to give permission for cutting the walnut timber and selling the logs. After all, Missouri Walnut was not a bona fide purchaser, and Williams made no effort to perform a record search in order to determine if Prendergast owned the timber that he purported to permit to be logged. I do not understand why the jury awarded them punitive damages in light of evidence that they failed to determine whether Prendergast owned what he purported to sell.

However, I do not share Judge Hart's view that somehow places economic injuries below bodily injuries for purposes of punitive damages awards. Punitive damages are not awarded to make an injured party whole; that is the function of compensatory damages. *See Dunaway v. Troutt*, 232 Ark. 615, 339 S.W.2d 613 (1960), *overruled on other grounds by United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998). Rather, punitive damages are awarded to punish an actor for intentional or reckless conduct that society seeks to deter, and to (implicitly) encourage persons injured by that conduct to serve societal interests by prosecuting the actor. *See, e.g., D'Arbonne Constr. Co., Inc. v. Foster*, 354 Ark. 304, 308, 123 S.W.3d 894, 898 (2003) (noting that punitive damages are justified "only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred"); *see also Jim Ray, Inc. v. Williams*, 99 Ark. App. 315, 260 S.W.3d. 307 (2007). In that sense, I see no legitimate difference between awarding punitive damages for intentional or reckless conduct that results in economic loss and doing so in cases of personal injury. I do not find the ratio of damages in this case excessive; rather, I disagree with the premise that punitive damages were appropriate on claims by Missouri Walnut and Williams.

I only vote to affirm, quite reluctantly, because it appears that appellant's directed verdict motions against Missouri Walnut and Williams did not address punitive damages. As we do not consider on appeal allegations of error that were not presented below, *see, e.g., Hackelton v. Malloy*, 364 Ark. 469, 221 S.W.3d 353 (2006), I join the majority's decision to affirm the punitive damages awarded to Missouri Walnut and Williams. I do not like doing so, and would prefer to vote to reverse the awards. However, appellant's failure to challenge the submission of punitive damages to the jury precludes appellate review of the awards.

JOSEPHINE LINKER HART, Judge, dissenting. I agree with the majority that there is no merit to Prendergast's first and third points. I, however, disagree with the majority's and the concurrence's conclusion that most of Prendergast's challenge to the punitive damage award was not preserved and that the majority's decision that the award was proper.

First, I note that Prendergast *did* make a directed-verdict motion. In it, he argued that Williams was not entitled to damages because his reliance on the deed was not reasonable. If he argued

that *no* damages should be awarded, why does he also have to argue that punitive damages are also not appropriate? In Arkansas, it is axiomatic that "in the absence of an award for damages for the underlying cause of action, punitive damages are improper." *Bell v. McManus*, 294 Ark. 275, 277, 742 S.W.2d 559, 560 (1988).

However, even assuming that the directed-verdict motion was insufficient, Prendergast's motion for a new trial sufficiently preserved his argument concerning the *excessiveness* of the punitive damages. My review of the case law suggests that this is a distinction without a difference. In *Advocat, Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346 (2003), the supreme court found that the appellant had failed to renew its directed-verdict motion, yet found that the *excessiveness* of the punitive damages was preserved for review because the appellant made a post-trial motion. Significantly, in evaluating whether the damages were *excessive*, the supreme court first examined the evidence to determine whether punitive damages were *appropriate*. I believe we did the very same thing in *Superior Federal Bank v. Mackey*, 84 Ark. App. 1, 129 S.W.3d 324 (2003). By the majority indulging in this manner of pseudo-precision when analyzing preservation in this area of the law, this court is filling for the bar a position equivalent to the tailor in *The Emperor's New Clothes*.

Even more indefensible is the majority's conclusion that even though "Prendergast sets out some of the elements required for a due process challenge to the punitive-damages awards . . . neither in the trial court nor in his appeal before us does he specifically make a constitutional argument." The majority reaches this remarkable conclusion even though Prendergast makes an argument based on factors enumerated in *State Farm Mutual Insurance Co. v. Campbell*, 538 U.S. 408 (2003), albeit as quoted — with proper attribution — in *Superior Federal Bank v. Jones & Mackey Construction*, 93 Ark. App. 317, 219 S.W.3d 643 (2005). It should be obvious to every person with a law degree that *Campbell*, a case out of the United States Supreme Court, involves construction of the United States Constitution. Accordingly, by citing *Campbell* Prendergast is making a constitutional argument. Ordinarily, the appellate courts of this state disdain exalting form over substance. *Velek v. State (City of Little Rock)*, 364 Ark. 531, 222 S.W.3d 182 (2006); *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004); *Nettles v. City of Little Rock*, 96 Ark. App. 86, 238 S.W.3d 635 (2006). I lament that the majority did not take to heart the writing of one of our learned colleagues earlier this term when

Judge Marshall stated "doctrinal labels are not controlling; the substance of the argument made is." *Miller v. Cothran*, 102 Ark. App. 61, 280 S.W.3d 580 (2008) (quoting "We must think things not words[.]" Oliver Wendell Holmes Jr., *Law in Science and Science in Law*, 12 Harv. L. Rev. 443, 460 (1899)).

By holding that Prendergast has not preserved a "constitutional" argument, the majority has excused itself from analyzing the reprehensibility of Prendergast's conduct in the exact way that Prendergast argued this point to the trial court and now argues on appeal, despite his citation of unquestionably relevant authority. This is remarkable. While I am well familiar with the convention established by appellate courts of this state whereby we decline to consider arguments when an appellant fails to cite authority or make convincing argument, *see, e.g., Northport Health Servs., Inc. v. Owens*, 82 Ark. App. 355, 107 S.W.3d 889 (2003), this is the first time I have seen an appellant's argument barred where he has done both! I believe that we owe Prendergast the same effort we expended in *Jim Ray, Inc. v. Williams*, 99 Ark. App. 315, 260 S.W.3d 307 (2007) (super en banc) (citing *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S.424 (2001)).

Prendergast argued that in determining the appropriateness of a punitive-damage award, we should evaluate the conduct in light of five factors enumerated in *Superior Federal Bank v. Jones & Mackey Construction*, 93 Ark. App. 317, 219 S.W.3d 643 (2005). Those factors are: 1) whether the harm caused was physical as opposed to economic; 2) whether the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; 3) whether the target of the conduct had financial vulnerability; 4) whether the conduct involved repeated actions or was an isolated incident; 5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Id.* With regard to Missouri Walnut, 1) any harm suffered was economic and not physical; 2) any alleged tortious conduct on the part of Prendergast did not demonstrate an indifference to or a reckless disregard of the health or safety of others; 3) there is no evidence that Missouri Walnut was ever the specific target of his conduct and there is no evidence of any financial vulnerability on Missouri Walnut's part; 4) the conduct was an isolated incident and not a series of repeated actions; and 5) there was no evidence of any harm to Missouri Walnut that was the result of intentional malice, trickery, or deceit directed specifically at Missouri Walnut. Under these facts, I

believe the inevitable conclusion is that the punitive-damage award to Missouri Walnut was excessive.

Looking next at the award to Williams, 1) the harm suffered was economic and not physical; 2) any alleged tortious conduct on the part of Prendergast did not demonstrate an indifference to or a reckless disregard of the health or safety of Williams or any other person; 3) there is no evidence that of any financial vulnerability on Williams's part, notwithstanding his testimony that his business declined in the aftermath of his dealing with Prendergast; 4) the conduct was an isolated incident and not a series of repeated actions; and 5) while there was evidence of trickery and deceit, at best, Williams was willing to be deceived. It was undisputed that Prendergast was not the landowner of record as reflected in the plat book, and as Williams's own testimony revealed, prior to his securing Prendergast's signature on the timber deed, he knew that Prendergast did not live on the property that the trees were harvested. Again, the only logical conclusion is that the punitive-damage award to Williams was excessive. Finally, even assuming that the majority correctly claimed that it could only consider what it believed was a *preserved* argument, i.e., whether the award of punitive damages "shocks the conscience of the court," I would still reverse. First, the only innocent victims in this case were Prendergast's sisters, and they were well-compensated for their losses with statutorily mandated treble damages. Williams was certainly not victimized in this episode. First, he received full compensation for cutting the timber. Moreover, and more importantly, I cannot close my eyes to the fact that he was almost as culpable as Prendergast in this scheme. Williams procured Prendergast's signature on an instrument that he *drafted*. Not only does this make Williams an accomplice, by drafting the timber deed, he was practicing law without a license. I find it remarkable that we allow this wrong-doing to be rewarded so handsomely. *Cf. Preston v. Univ. of Ark. for Med. Sciences*, 354 Ark. 666, 128 S.W.3d 430 (2003).

As for Missouri Walnut, it is a corporation that is not licensed to do business in Arkansas. Moreover, it deliberately chose to deal with Williams, not the individual (Prendergast) reflected on the unrecorded timber deed, and to remain blissfully ignorant of the identity of the true owner of the logs by ignoring the information in the plat book that it had in its possession, not to

mention Arkansas law.[1] (Emphasis added.) I submit that the conscience of this court should be shocked when a jury awards a substantial amount of damages to any business when the only reason they suffered "damages" was because they flouted the laws of the State of Arkansas.

BAKER, J., joins.

---

[1] Arkansas Code Annotated section 15-32-407 (Repl. 2003) states:

(b) *No conveyance, lien, mortgage, or transfer shall be valid except as to the parties thereto, until it is recorded* or until it shall be filed with some deputy county timber inspector, who shall immediately forward the instrument to the inspector.

(c) The filing and recording of all instruments and papers shall have the same effect as notice as the recording of deeds and mortgages in the office of the recorder of deeds.