Richard L. PRESTON and Gloria Preston *v.* UNIVERSITY of ARKANSAS for Medical Sciences; The University Hospital of Arkansas; Johannes Gruenwald, M.D.; William C. Grammar, M.D.; Kenneth G. Gati, M.D.; Laurie Hughes, M.D.; Anthony Roman, M.D.; and Robert S. Sedaros, M.D.

03-120 128 S.W.3d 430

Supreme Court of Arkansas
Opinion delivered November 6, 2003

*Richardson, Stoops, Richardson & Ward*, by: *Eddie D. Ramirez*, for appellants.

*Friday, Eldredge & Clark*, by: *Fran C. Hickman* and *Lindsey Mitcham*, for appellees.

ROBERT L. BROWN, Justice. This is an appeal from an order dismissing the complaint of appellants Richard L. Preston and Gloria Preston. The Prestons raise the following points on appeal: (1) their complaint filed by non–licensed attorneys should not nullify their cause of action because their complaint was filed within the time limits of the statute of limitations; and (2) the trial court erred in granting the appellee doctors' motions to deem their requests for admission of facts admitted. We hold that the points raised on appeal have no merit, and we affirm.

On November 17, 1999, Richard Preston fell and broke his left femur in Fort Smith. He was taken to the University Hospital in Little Rock for treatment. Two days later, Drs. Gruenwald, Gati, Grammar, Hughes, Roman, and Sedaros (appellee doctors) inserted a compression plate into his left femur at the University Hospital. While the doctors were inserting screws into the plate, the drill bit apparently broke, numerous screws apparently broke,

and the screws and drill bits were left inside the femur. Richard Preston later complained of pain during follow-up visits to the hospital.. On February 17, 2000, x-rays were taken and disclosed that displaced screws and screw heads were present in the muscle tissue of the left thigh area adjacent to the compression plate.

On November 19, 2001, the Prestons filed their complaint against the appellee doctors and University Hospital. They complained that Richard Preston sustained severe pain and damage due to the doctors' negligence and University Hospital's failure to credential adequately and supervise. In addition, they claimed that Gloria Preston suffered loss of consortium and mental pain and suffering. The complaint stated that the Prestons brought their complaint "by and through their attorneys Fred E. Stoops, Sr., Richard D. Marrs and Eddie D. Ramirez, of the law firm of Richardson, Stoops, Richardson & Ward" located in Tulsa, Oklahoma.

On February 11, 2002, the six appellee doctors filed separate answers. Each doctor also filed requests for six admission of facts on that same date.[1] On February 21, 2002, University Hospital filed a separate answer and motion to dismiss based on the fact that the hospital is entitled to governmental immunity and may not be sued directly in tort. On March 5, 2002, the University of Arkansas for Medical Sciences (UAMS) also filed a motion to dismiss in which it asserted that the court lacked jurisdiction, because a claim against UAMS is a claim against the State, which is prohibited by the Arkansas Constitution.

On July 18, 2002, the appellee doctors filed motions to deem requests for admission of facts admitted. The next day, the appellee doctors filed a motion to strike the Prestons' complaint in which they argued:

---

[1] The doctors requested that the Prestons admit: (1) that they do not have any qualified medical support for the allegations of negligence against the doctors in the complaint; (2) that they do not have any qualified medical support for the allegation that any alleged act of negligence against the doctors was a proximate cause of injury to Richard Preston; (3) that they do not have any qualified medical support to support the allegation in the complaint that Richard Preston's injuries were caused by the doctors' care and treatment; (4) that the doctors are not vicariously liable for any acts of negligence of the other named defendants; (5) that the doctors were not negligent in the care and treatment of Richard Preston; and (6) that any actions or inactions on the part of the doctors were not the proximate cause of any damages or injuries alleged in the complaint.

There have been no filings for request for admission Pro Hac Vice, there is no local counsel involved, and there has been no certificate or affidavit filed with the Court stating that any of the Oklahoma lawyers listed on the Complaint have agreed to be bound by Arkansas' disciplinary rules or that there is any type of comity with the State of Oklahoma.

On July 25, 2002, the Prestons responded to the appellee doctors' motions to deem requests for admission of facts admitted and filed a motion for leave to file responses to those requests out of time. The Prestons claimed that their responses were prepared and dated February 14, 2002, but that they either were not forwarded to the doctors' counsel or were forwarded but not received.

On July 25, 2002, the Prestons' Oklahoma counsel filed motions for admission *pro hac vice* to practice law before the circuit court. Counsel Fred Stoops asserted in his motion that he is authorized to practice law in Colorado and Indiana state courts and in Oklahoma state and federal courts; that he is an active member of the Oklahoma Bar Association and Indiana Bar Association and a resident of Oklahoma; that he is a regularly admitted practicing attorney in good standing in Oklahoma and Indiana courts of record; that he has appeared before Arkansas courts in connection "with a number of matters previously;" and that he submits himself to all disciplinary procedures in Arkansas. Counsel Richard Marrs asserted in his motion that he is authorized to practice law in Oklahoma state and federal courts, the United States Court of Military Appeals, the United States Court of Appeals D.C. Circuit, and the United States Court of Appeals 10th Circuit; that he is an active member of the Oklahoma Bar Association and a resident of Oklahoma; that he is a regularly admitted practicing attorney in good standing with the courts of record in Oklahoma; and that he will submit himself to all disciplinary procedures in Arkansas. Counsel Eddie Ramirez asserted in his motion that he is authorized to practice law in Oklahoma state and federal courts; that he is an active member of the Oklahoma Bar Association; that he is a regularly admitted practicing attorney in good standing in the courts of record in Oklahoma; and that he agrees to submit himself to all disciplinary procedures in Arkansas.

On August 2, 2002, the circuit court dismissed the Prestons' claims against UAMS and University Hospital without prejudice. On August 19, 2002, the appellee doctors responded to the motions for admission *pro hac vice* of counsel Marrs, Ramirez, and

Stoops and proposed that the circuit court deny the motions for admission *pro hac vice* and dismiss the Prestons' complaint, because their attorneys are not licensed to practice law in Arkansas. They further asserted that the Oklahoma counsel moved to be admitted to practice law *pro hac vice* after the Prestons filed their complaint. The appellee doctors claimed that the Prestons are forever barred from filing their cause of action, because the two-year statute of limitations for medical negligence has run.

On September 27, 2002, the circuit court conducted a hearing on the *pro hac vice* matter. At that hearing, Arkansas attorney Lamar Porter pointed out to the court that the Prestons' Oklahoma attorneys should not be deemed to be unauthorized to practice law in Arkansas, because Oklahoma has similar rules of comity and because Arkansas attorneys in Fort Smith apparently practice law in Oklahoma and Oklahoma attorneys practice law in Fort Smith.

On October 3, 2002, the circuit court entered its order of dismissal in which it granted the appellee doctors' motion to strike the complaint, because the Prestons' counsel were not licensed to practice law in Arkansas. The court found, as a result, that the Prestons' complaint was a nullity and concluded that their claims were forever barred, because the two-year statute of limitations had expired. The court also granted the appellee doctors' motion to deem their requests for admission of facts admitted and ruled that the Prestons, because of this, had no substantive cause of action. The court dismissed the Prestons' complaint with prejudice.

The Prestons first argue on appeal that they filed their cause of action within the statute of limitations and that they should not be penalized, because their attorneys were not licensed to practice law in Arkansas. They contend that our case of *Davenport v. Lee*, 348 Ark. 148, 72 S.W.3d 85 (2002), should not apply to this matter, because *Davenport* dealt with a wrongful-death action in which the parties failed to comply with Arkansas statutes. They point out that the plaintiffs in *Davenport* lacked standing to file a wrongful-death action, because they were not personal representatives and did not make up all statutory beneficiaries joined as parties to the suit, as the statute required. The Prestons assert that they, as individuals, should not be seen as being engaged in the unauthorized practice of law, forever barring them from pursuing their cause of action.

The Prestons further urge that the present cause of action should be allowed to go forward even if this court determines that their attorneys were engaged in the unauthorized practice of law. They underscore that Arkansas has other methods of dealing with the unauthorized practice of law, as set forth in *Davenport v. Lee, supra*, such as dismissal, reversal of a judgment in the cause, and disregarding the actions taken by the unauthorized practitioner. They further maintain that they should be allowed to pursue their complaint regardless of who the attorneys are and even if they did not have counsel at all. Finally, they claim that their attorneys have previously been allowed to practice before various state courts in Arkansas and that, accordingly, they have the right to bring their cause of action.

■ When we review an order granting a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *See Davenport v. Lee, supra; Goff v. Harold Ives Trucking Co.*, 342 Ark. 143, 27 S.W.3d 387 (2000). In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Davenport v. Lee, supra; Goff v. Harold Ives Trucking Co., supra.*

■■ This point clearly turns on whether the Prestons' Oklahoma attorneys were engaged in the unauthorized practice of law in Arkansas. The Oklahoma counsel unquestionably were practicing law in Arkansas, because they filed a complaint on behalf of the Prestons in an Arkansas court. *See Davenport v. Lee, supra; Arkansas Bar Assn. v. Union National Bank of Little Rock*, 224 Ark. 48, 273 S.W.2d 408 (1954). The real question for this court to resolve is whether that legal practice was authorized under Arkansas law. In the past, we have emphasized the importance of being authorized to practice law in this state by noting:

> It seems well settled that unauthorized practice of law, at least by court appearances, is an unlawful intrusion and usurpation of the function of an officer of the court, and constitutes a contempt of any court in which or under whose authority or sanction the unauthorized person pretends to act.

*McKenzie v. Burris*, 255 Ark. 330, 334-35, 500 S.W.2d 357, 361 (1973).

Admission to the bar of Arkansas and the practice of law in this state are governed by Ark. Code Ann. §§ 16-22-201 through 16-22-213 (Repl. 1999).[2] Section 16-22-206 states: "No person shall be licensed or permitted to practice law in any of the courts of record of this state until he has been admitted to practice by the Supreme Court of this state, and every person so admitted shall be entitled to practice in all the courts of this state." Ark. Code Ann. § 16-22-206 (Repl. 1999). Section 16-22-209 reads: "Every person who shall attempt to practice law in any court of record without being licensed, sworn, and registered, as required in this subchapter, shall be deemed guilty of a contempt of court and shall be punished as in other cases of contempt." Ark. Code Ann. § 16-22-209 (Repl. 1999).

■ In *Abel v. Kowalski*, 323 Ark. 201, 913 S.W.2d 788 (1996) (*per curiam*), this court held that an unlicensed attorney may not practice law in Arkansas under Ark. Code Ann. § 16-22-206 (1987), and, thus, could not represent appellants in that case. In *Abel*, a person appeared *pro se* but purportedly tendered a motion on behalf of appellants, requesting that a certain document be added to the record on appeal. We ordered that the court of appeals strike any motions filed by that person on behalf of other parties.

In the case at hand, the Prestons' attorneys admitted that they were not licensed to practice law in Arkansas and, therefore, were unauthorized under § 16-22-206. The follow-up question, however, is whether they were authorized to practice law in Arkansas under the principle of comity.

■ Rule XIV of the Rules Governing Admission to the Bar establishes our principle of comity and reads in part:

A lawyer residing outside the State of Arkansas who has been admitted to practice law in the Supreme Court of the United States or in the United States Court of Appeals for the circuit in which the attorney resides or in the Supreme Court or the highest appellate court of the state of the attorney's residence, and who is in good standing in the court of the attorney's admission, will be permitted by comity and by courtesy to appear, file pleadings and conduct the

---

[2] Our code dealing with admission and practice of attorneys at law was amended by Act 1185 of 2003 but not in a manner relevant to this appeal.

trial of cases in all courts of the State of Arkansas. However, any trial court may require such nonresident attorney to associate a lawyer residing and admitted to practice in the State of Arkansas upon whom notices may be served and may also require that the Arkansas lawyer associated be responsible to the court in which the case is pending for the progress of the case, insofar as the interest represented by the Arkansas lawyer and the nonresident lawyer is concerned.

Unless the State in which the said nonresident lawyer resides likewise accords similar comity and courtesy to Arkansas lawyers who may desire to appear and conduct cases in the courts of that State, this privilege will not be extended to such nonresident lawyer.

A nonresident lawyer will not be permitted to engage in any case in an Arkansas court unless a written statement is filed with the court in which the nonresident lawyer submits to all disciplinary procedures applicable to Arkansas lawyers.

We have held that under Rule XIV a circuit court may dismiss a motion for an extension of time to file a brief by a nonresident attorney. *See Walker v. State*, 274 Ark. 124, 622 S.W.2d 193 (1981) (*per curiam*). In *Walker*, this court went on to say that the motion for extension of time would be dismissed if the nonresident attorney failed to sign a written statement submitting himself to all disciplinary procedures applicable to Arkansas lawyers within twenty days.

In *Willett v. State*, 334 Ark. 40, 970 S.W.2d 804 (1998) (*per curiam*), this court denied appellant's motion to admit an attorney licensed in Texas to practice in Arkansas *pro hac vice* for the purpose of participating in the oral argument of the case. In *Willett*, the Texas attorney filed a reply brief but did not state that he was admitted to the Arkansas Bar. The motion to admit *pro hac vice* only stated that the nonresident attorney was in good standing in another jurisdiction, and it incorporated an affidavit of the attorney and a certificate of good standing from the Texas State Bar Association. The nonresident attorney's affidavit also related his experience in representing clients in courts of the United States, Texas, and New Mexico and included a statement that the attorney agreed to be bound by the rules of discipline of Arkansas.

We denied the appellant's motion to admit the Texas attorney *pro hac vice*, because (1) Rule XIV:

permits the admission *pro hac vice* of nonresident attorneys licensed in states that grant comity to Arkansas attorneys, but *neither the motion nor the affidavit mentions whether Texas courts would allow Arkansas attorneys to appear by comity in an instance similar to this one*[,]

and (2) the motion and affidavit fail to state the attorney is a nonresident of Arkansas. *Willett*, 334 Ark. at 42, 970 S.W.2d at 805 (emphasis added). We further noted:

> While there is little doubt that [the nonresident attorney] is qualified to represent [appellant], it is equally apparent that there is a lack of compliance with Rule XIV, and *we have before us neither argument nor citation to authority suggesting that there is or should be an exception in this case.*

*Id.* at 43, 970 S.W.2d at 806 (emphasis added).

■ In the instant case, the Prestons' attorneys could only be authorized to practice law in Arkansas *pro hac vice* if the circuit court, in its discretion, extended comity to them under Rule XIV. The Oklahoma attorneys revealed in their motions for admission *pro hac vice* that they were admitted to practice in the U.S. Court of Appeals for the circuit in which they resided and in the highest appellate court of Oklahoma and that they were in good standing in Oklahoma courts. They further submitted written statements to the circuit court in which they agreed to submit themselves to all disciplinary procedures applicable to Arkansas lawyers. Yet, the motions for admission *pro hac vice* were filed too late for the attorneys to receive permission to practice in this state under Rule XIV. The clear intent of Rule XIV is that the written statement be submitted *before* the attorneys engage in the practice of law in Arkansas.

It is undisputed that prior to filing the Prestons' complaint on November 19, 2001, the Oklahoma counsel had not filed a motion for admission *pro hac vice*; moreover, there was no local counsel involved in the matter, and the Prestons' counsel had failed to file any certificate or affidavit stating that they were in good standing in Oklahoma, that they agreed to be bound to Arkansas disciplinary rules, or that there is comity in Oklahoma to admit Arkansas attorneys to practice in that state. Even when Oklahoma counsel filed a motion for admission *pro hac vice* on July 25, 2002, which was eight months late, their written statement still

failed to spell out Oklahoma's comity rule regarding Arkansas attorneys, as required by Rule XIV and as referenced in *Willett v. State, supra.*

 The Prestons had two years to find Arkansas counsel to represent them or to have their Oklahoma attorneys file an admission to practice *pro hac vice* with this State before filing their complaint. Even after filing the complaint, Oklahoma counsel waited eight months to file their *pro hac vice* admission motion. The circuit court concluded that the Oklahoma attorneys failed to comply with our rule of comity, Rule XIV. We hold that the court's conclusion was not an abuse of discretion.

The next question for this court to resolve is what consequences result from a complaint filed by unauthorized, unlicensed counsel. The Prestons cite this court to *Davenport v. Lee, supra,* and attempt to distinguish it from the case at bar. In *Davenport,* this court was concerned with review of an Arkansas Court of Appeals decision in which a non-attorney, personal representative was not authorized to file a *pro se* complaint in a wrongful-death action. The question before us was whether this defect rendered the complaint a nullity. We held that it did and said:

> Under Ark. R. Civ. P. 11(a), "[a] party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address and telephone number, if any." In addition, Ark. R. Civ. P. 64(a), provides that, when additional counsel is employed to represent any party in a case, that counsel shall immediately cause the clerk to enter his name as attorney of record in the case and then shall notify the court and opposing counsel that he has been employed. Here, the lack of any signature by an attorney on the complaint is indicative of Appellants' *pro se* status at the time this action commenced.

*Davenport,* 348 Ark. at 158, 72 S.W.3d at 90.

 We then determined, in *Davenport,* that the appellants were engaged in the unauthorized practice of law and said: "It is axiomatic that it is illegal to practice law in Arkansas without a license." *Id.* at 162, 72 S.W.3d at 92. We held that the complaint was a nullity and said:

> In light of our duty to ensure that parties are represented by people knowledgeable and trained in the law, we cannot say that the

unauthorized practice of law simply results in an amendable defect. Where a party not licensed to practice law in this state attempts to represent the interests of others by submitting himself or herself to jurisdiction of a court, those actions such as the filing of pleadings, are rendered a nullity.

*Davenport,* 348 Ark. at 164, 72 S.W.3d at 94. We further concluded that "the original complaint, as a nullity never existed, and thus, an amended complaint cannot relate back to something that never existed, nor can a nonexistent complaint be corrected." *Id.* We hold that the same is true for the case before us. The *Davenport* case governs our decision, and the Prestons' complaint is a nullity.

■■ The Prestons finally claim that, because their attorneys were not licensed to practice law in Arkansas, it is as if the Prestons appeared *pro se.* They, however, did not appear *pro se,* because they hired attorneys to handle their case, and those attorneys signed the complaint. *See Arkansas Bar Assn v. Union National Bank of Little Rock, supra.* We added in *Arkansas Bar Assn:* "It is generally conceded that an individual who is not a licensed attorney can appear in the courts and engage in what is commonly conceded to be practicing law provided he does so for himself and in connection with his own business." 224 Ark. at 51, 273 S.W.2d at 410. The Prestons' *pro se* argument has no merit.

We next consider whether the statute of limitations has run on the Prestons' complaint. The statute of limitations for medical negligence applicable to this case reads in pertinent part:

(a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.

(b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time. However, where the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier.

Ark. Code Ann. § 16-114-203 (Supp. 1999).

For purposes of the statute of limitations, it is the filing of the complaint that commences the cause of action. *See Davenport v. Lee, supra.* In the case at bar, Richard Preston underwent surgery to his left femur on November 19, 1999. On February 17, 2000, x-rays were taken and revealed debris in the muscle tissue of the left thigh. Two years after his surgery on November 19, 2001, the unauthorized Oklahoma counsel filed the complaint on behalf of the Prestons. On July 25, 2002, these same attorneys filed a motion for admission to practice *pro hac vice*. On October 3, 2002, the circuit court found that, because the Prestons' attorneys were unauthorized to practice law in Arkansas, their complaint was a nullity, as if it had never been filed. Under § 16-114-203(a), the statute of limitations for medical malpractice expired on November 19, 2001, the day the complaint, which was a nullity, was filed. Accordingly, no valid complaint was filed within the required two-year period. Under § 16-114-203(b), even assuming *arguendo* that the debris found in Richard Preston's thigh falls within the "foreign object" exception, the statute of limitations has run. However, at that time no valid and operable complaint had been filed. Thus, under either the general statute of limitations for medical malpractice or the statute of limitations for the "foreign object" exception, the Prestons' attorneys were not authorized to practice law in Arkansas at the time the statute of limitations had run.

We reiterate our holding that the complaint was a nullity due to Oklahoma counsel's unauthorized practice of law and, therefore, void and of no effect. We further hold that the circuit court correctly dismissed this matter because no valid complaint had been filed within the time period of the statute of limitations. Because we affirm the circuit court's dismissal on these grounds, we need not address the Prestons' second point relating to requests for admission of facts.

Affirmed.