

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00089-CV
_____

JUDGE CARLOS CORTEZ, Appellant

V.

COYT RANDAL (RANDY) JOHNSTON, THE DALLAS MORNING NEWS, INC.,
AND ALM MEDIA, LLC, D/B/A THE TEXAS LAWYER
AND JUDGE MARTY LOWY, Appellees

On Appeal from the 298th Judicial District Court
Dallas County, Texas
Trial Court No. DC-10-14346

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Carlos Cortez has appealed an order of a trial court determining that certain documents presented to and file stamped by the District Clerk of Dallas County are "court records" as defined in Rule 76a of the Texas Rules of Civil Procedure.[1]

The controversy over these documents has its genesis in a dispute between Cortez and Coyt Randal (Randy) Johnston, the named defendant in the suit from which this appeal is being prosecuted. This is not this Court's first exposure to the dispute between Cortez and Johnston. Cortez, a Dallas County district judge, had brought a suit against Johnston under Rule 202, Texas Rules of Civil Procedure, in an effort to depose Johnston, and Johnston filed a petition for writ of mandamus in which he had sought to block the taking of his deposition. This Court denied that petition in our cause number 06-10-00095-CV. Some of the facts giving rise to the immediate controversy as recited within this opinion may have their origin in our familiarity with the previous case before this Court, the file contents of which we take judicial notice.

The conflict had its roots in the filing by Johnston of a complaint against Cortez with the State Judicial Conduct Commission (Commission), wherein Johnston alleged that Cortez had (among other things) publicly demeaned other judges and was rumored to have consorted with prostitutes and used illicit drugs. Although the contents of such filings are required by law to be held in the strictest confidence (TEX. GOV'T CODE ANN. § 33.0321 (West 2004)), someone apparently ignored the confidential constraints and some of the information contained in the complaint was leaked to at least one member of the press. Cortez was questioned by a reporter

---

[1]This was originally appealed to the Fifth Court of Appeals and was transferred to this Court after all of the justices of the Fifth Court of Appeals recused themselves.

about this filing and, in response, Cortez mentioned Johnston as the source of the accusations and labeled each of the charges fabrications. Cortez also lambasted Johnston and three Dallas County district judges, naming them as willing participants in the complaint and predicting the professional demise of all four. The story of the filing of the complaint and Cortez's public response were published. At some point after this, Johnston released information to multiple parties (including many attorneys and, presumably, representatives of the press) as to the content of the accusations in his filing. This public revelation by Johnston was followed by the above-mentioned suit to compel Johnston's deposition and, ultimately, by the filing of a defamation suit by Cortez against Johnston.

In the course of the ensuing lawsuit, Cortez made a demand on Johnston for disclosure pursuant to Rule 194, et seq. of the Texas Rules of Civil Procedure, and Johnston sought Cortez's deposition. After some disagreements concerning the logistics of the sought deposition and the amount of restrictions (if any) to be placed on the fruits of discovery, the parties entered into a Rule 11 agreement dated January 14, 2011, which provided that the contents of the deposition would "not be published nor shared with any non-parties nor used for any purpose other than as evidence in this lawsuit until such time as the court rules on the issue of whether a Protective Order should be placed on the use of Judge Cortez' deposition." The Rule 11 agreement went on to say that such a determination was to be sought at the earliest date and that "[f]ailure by Judge Cortez to bring the issue before the Court per this agreement will render this Rule 11 agreement a nullity." On January 18, 2011, Cortez filed a motion for protective order in which he sought to have the trial court designate virtually all of the discovery and pleadings in

3

the case designated as "confidential information" which would be ordered (in essence) sealed from public view and used only for the purposes of the pending litigation. The parties proceeded to the taking of Cortez's deposition on January 17, 2011, during which Cortez refused to respond to a number of personal questions posed to him.

On Friday, February 11, 2011, Johnston hand delivered Cortez his response to the request for disclosure, which had been demanded by Cortez. This response included two witness statements taken by Johnston, the contents of which, if true, at the very least would certainly elicit public disapprobation of Cortez. Immediately after Cortez's receipt of the response to the request for disclosures that had been requested, Cortez was apparently either stricken with a sudden attack of pudeur or he determined that discretion was the better part of valor. Whatever might have prompted Cortez, he demonstrated remarkable alacrity by filing (on the same day) a notice of nonsuit of his claims against Johnston.

The next working day (Monday, February 14), Johnston filed a motion to compel and for sanctions, seeking attorney's fees. This motion incorporated as exhibits a copy of the complaint which Johnston had filed with the Commission and the entire deposition testimony of Cortez. Johnston simultaneously filed a copy of the requested disclosure, which incorporated the two witness statements to which reference is made above. (The motion to compel and for sanctions made specific references to the witness statements as well.) These were apparently delivered to the clerk by Johnston in an envelope which was sealed by Johnston and marked by him as "Sealed Documents." Later that same day, the trial court entered its order of nonsuit without prejudice in compliance with Cortez's notice.

4

Some three weeks after the entry of the order on Cortez's nonsuit, The Dallas Morning News, Inc., and ALM Media, LLC, d/b/a The Texas Lawyer, jointly intervened in the lawsuit pursuant to Rule 76a, Texas Rules of Civil Procedure, asserting a right of access to court records, anticipatorily denying that the same should be sealed. *See* TEX. R. CIV. P. 76a. Quite late in the proceedings, Judge Martin Lowy (one of the Dallas County district judges publicly criticized by Cortez) also filed an intervention. Reference to all three of these parties is hereinafter made as Intervenors.

The trial court allowed the parties to file briefs concerning the issues of whether the documents were court records, as defined in Rule 76a, and—if they were court records—whether they should be sealed. A hearing was held April 11 on the application of the Intervenors for access to the records, during which Cortez requested the trial court that he be allowed to meet with the court during an in camera review of the documents (outside the presence of the Intervenors) to provide explanations as to why he believed portions of the documents should be ordered sealed. The trial court indicated that an in camera review of the documents had already been conducted by him and the trial court refused to allow Cortez to engage in an ex parte explanation of the reasons Cortez believed that the documents should be sealed. Cortez then announced to the trial court that he was withdrawing his request that the documents be sealed and that he now sought only a determination as to whether the documents were "court records" as defined by Rule 76a, but maintaining that he still had a right pursuant to Rule 192.6 of the

5

Texas Rules of Civil Procedure to a protective order sealing the documents.[2] *See* TEX. R. CIV. P. 192.6.

On April 15, 2011, the trial court entered an order which reads as follows:

On April 11, 2011, a hearing was held to determine whether the documents for which a Protective Order is sought were "court records.'' After review of the evidence and argument of counsel the court finds the documents filed by defendants in this cause are "court records" and sets this matter for hearing on May 9, 2011 pursuant to Rule 76a, Texas Rules Civil Procedure and orders that notice of this hearing be given as required by Rule 76a.

In his appeal of that order, Cortez raises many points, most of which relate to issues which bear no relation to the issue of whether these are court records but, rather, bear upon the issue of whether the documents should be sealed. He argues (both in his brief and at oral argument) that he is protected under various theories from disclosure of at least a portion of the contents of the documents.[3] We point out that the sole order from which any appeal has been taken is the singular determination that the documents are "court records" as defined by Rule 76a and nothing else. We will not deal in speculation about whether any of Cortez's arguments that the documents could (or should) be protected from disclosure by sealing have merit or whether the trial court should have permitted Cortez to have an ex parte session with the trial court to explain his reasoning for finding in his favor. To do so would require us to issue an advisory

[2]We note the existence of two apparently diametrically opposed positions taken by Cortez as to the activities which the lawsuit could support after the filing of the nonsuit. On one hand, Cortez maintains that these documents could not be filed in the lawsuit because it was an empty shell. Yet, Cortez argues (despite the fact that the sole question before us is the determination of whether the documents are "court records") that the case will still permit him to seek a protective order pursuant to Rule 192.6 of the Texas Rules of Civil Procedure, even though this Rule does not contain a similar provision to that providing for continuing jurisdiction found in Rule 76a(7) of the Texas Rules of Civil Procedure.

[3]For instance, Cortez employs the word "privilege" some eighty-four times in his brief without any clear explanation of the nature of the privilege being claimed.

opinion, a realm into which appellate courts are forbidden to enter. *Patterson v. Planned Parenthood of Houston & Sw. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (citing *Morrow v. Corbin*, 62 S.W.2d 641, 646 (Tex. 1933)).

In determining whether documents are "court records," we must look at what that definition includes, which is set out in Rule 76a(2) of the Texas Rules of Civil Procedure, stating that court records are:

> (a)  all documents of any nature filed in connection with any matter before any civil court, except:
>
> > (1)  documents filed with a court in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents;
> >
> > (2)  documents in court files to which access is otherwise restricted by law;
> >
> > (3)  documents filed in an action originally arising under the Family Code.
>
> (b)  settlement agreements not filed of record, excluding all reference to any monetary consideration, that seek to restrict disclosure of information concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government.
>
> (c)  discovery, not filed of record, concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government, except discovery in cases originally initiated to preserve bona fide trade secrets or other intangible property rights.

TEX. R. CIV. P. 76a(2).

Certainly, none of the documents fall within the portion of the definition set out in Rule 76a(2)(b) as there obviously was no settlement of the issues in this case. If they are court records, they must be found to be included within one of the other two definitions.

*Application of Rule 76a(2)(a)*

In looking at the pertinent documents to determine if they fall within Rule 76a(2)(a), we must take into account the fact that the documents were not filed until after Cortez filed his sudden nonsuit. What was the status of the case once the nonsuit was filed?

Here, although Johnston had apparently intended to file a motion for sanctions for Cortez's refusal to answer pertinent questions at his deposition, he had not yet done so and he had no other claims pending at that time which had been filed before the filing of the notice of nonsuit. However, Johnston did file the documents between the time that Cortez filed his notice of nonsuit and the entry of the order granting the nonsuit, well within the plenary power of the trial court. What, then, is the impact of Johnston's filing of a motion for sanctions and does that motion fall within the definition of "court records" as defined by Rule 76a(2)(a)?

The knee jerk reaction is to look solely to Rule 162 of the Texas Rules of Civil Procedure (dealing with dismissals and nonsuits), which states in part, "A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, *pending at the time of dismissal*, as determined by the court." TEX. R. CIV. P. 162 (emphasis added). Taking that further, we find that the Texas Supreme Court has said, "Even if the nonsuit applies to the entire case, the nonsuit or voluntary dismissal is effective when notice is filed or announced in open court. Entry of an order granting the nonsuit is ministerial." *FKM P'ship, Ltd. v. Bd. of Regents*

8

*of the Univ. of Houston Sys.*, 255 S.W.3d 619, 632 (Tex. 2008). This kind of statement might lead one to the conclusion that once a notice of nonsuit is given, it is always the case that once the plaintiff nonsuits and there are no pending claims for affirmative relief remaining on file, "The lawsuit remains on the docket merely as an empty shell awaiting the final ministerial act of dismissal." *Zimmerman v. Ottis*, 941 S.W.2d 259, 263 (Tex. App.—Corpus Christi 1996, no writ).

However, this fails to take into account that because a trial court does not lose plenary power over the case until after the expiration of thirty days from the date of the entry of a final judgment (TEX. R. CIV. P. 329b(d), (e)), it still retains the power during that time period to impose sanctions, even if a motion to impose sanctions had not been filed before delivery of the notice of nonsuit. *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996). "After a nonsuit, a trial court retains jurisdiction to address collateral matters, such as motions for sanctions, even when such motions are filed after the nonsuit, as well as jurisdiction over any remaining counterclaims." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). Therefore, the trial court still had the authority to entertain Johnston's motion to compel and motion for sanctions, despite the fact that the actual filing of the motion followed the filing of the notice of nonsuit by a weekend.[4]

The case was obviously not filed in an action originating under the Texas Family Code and we have not been shown that access to the records is "otherwise restricted by law," despite

_____

[4]If the trial court determined that Cortez could have been compelled to answer the questions to which he refused to respond, it would have been possible for the trial court to conclude that at least some of the preparatory work for the motion to compel and for sanctions took place before the announcement of a nonsuit, thereby raising the possibility that sanctions could have been granted.

the fact that Cortez has attempted to say that those records are restricted from disclosure by certain nebulous and unnamed privileges. TEX. R. CIV. P. 76a(2)(a)(3).

Cortez steadfastly maintains that all of the documents were filed with the trial court in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents. Although they were filed in an envelope upon which Johnston had marked "Sealed Documents," there was neither any request made by him or by Johnston that they be examined only in camera, nor was there any request that the trial court rule on their discoverability. Motions are not discovery matters. The trial court correctly determined that the motion to compel and for sanctions was not filed in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents.

None of the three exceptions to Rule 76a(2)(a) exclude the motion to compel and for sanctions from inclusion within the definition of "documents of any nature filed in connection with any matter."[5] TEX. R. CIV. P. 76a(2)(a).

The entirety of Johnston's motion to compel and for sanctions (with its exhibit attachments, including the deposition of Cortez and the letter of complaint which Johnston filed with the Commission with its attachments) falls within the Rule 76a(2)(a) definition of "court records."

---

[5]We note that if the motion to compel and motion for sanctions (which included an attached copy of the deposition of Cortez) is not a court record under Rule 76a(1)(a), the deposition itself would be unfiled discovery within the definition of court records as contained in Rule 76a(1)(c), discussed hereinafter, subject to the same restrictions set out in that Rule.

*Application of Rule 76a(2)(c)*

The final definition of "court records" is found in Rule 76a(2)(c), which incorporates unfiled discovery meeting certain criteria. The response to the request for disclosure (with the attached two witness statements) are not incorporated within the motion to compel and for sanctions.[6]

Rule 191.4(a)(2) of the Texas Rules of Civil Procedure specifically includes responses to discovery requests as discovery materials which "must not be filed." TEX. R. CIV. P. 191.4(a)(2). Accordingly, the responses to the requests for disclosure were specifically prohibited from being filed with the clerk of the court and we treat them as being unfiled—despite the fact that they were in the same envelope with the motion to compel and for sanctions. After determining that they fall within the category of unfiled discovery, we look to see if they are the kind of discovery material which Rule 76a(2)(c) classifies as not falling within that definition of "court records."

As mentioned above, Rule 76a(2)(c) specifically incorporates within the definition of "court records" such unfiled discovery which concerns "matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government, except discovery in cases originally initiated to preserve bona fide trade secrets or other intangible property rights." TEX. R. CIV. P. 76a(2)(c). The trial court indicated that it had reviewed all of the documents in camera and all of the documents were introduced into evidence (albeit remaining under seal). Based upon his review of the documents

---

[6]The findings of fact entered by the trial court say that the witness statements were obtained by Johnston outside of the discovery process and belonged to him. However, when copies of these statements were delivered to Cortez in response to his request for disclosure, they also became unfiled discovery.

11

and the evidence introduced, the trial court made extensive findings of fact and conclusions of law.

The trial court found that the contents of the documents include information that concern matters that have a probable adverse effect upon the administration of public office or the operation of government because undisclosed information may be used by litigants attempting to gain an unfair advantage before Cortez acting in his official capacity as a district judge and because the papers contain allegations which could impact the public reputations of four judges and an attorney, as well as calling in questions of disrepute to the operations of the civil district courts in Dallas County, the State Bar of Texas, and the Texas Judicial Conduct Commission. We review the trial court's rulings on a Rule 76a proceeding for an abuse of discretion. *Gen. Tire*, *Inc. v. Kepple*, 970 S.W.2d 520 (Tex. 1998).

When the character of documents is disputed, the party claiming that the documents are court records has the burden to prove by a preponderance of the evidence that the documents are court records. *Roberts v. West*, 123 S.W.3d 436, 441 (Tex. App.—San Antonio 2003, pet. denied); *Upjohn Co. v. Freeman*, 906 S.W.2d 92, 95–97 (Tex. App.—Dallas 1995, no writ); *Eli Lilly & Co. v. Biffle*, 868 S.W.2d 806, 808 (Tex. App.—Dallas 1993, no writ). The trial court determines whether the documents are court records based upon evidence. *Biffle*, 868 S.W.2d at 809.

We find that the trial court, having reviewed the documents, had sufficient evidence to make the findings that they were, indeed, court records and did not abuse its discretion in making that finding.

12

We affirm the judgment of the trial court in its determination that the documents are court records.


                                        Bailey C. Moseley
                                        Justice

Date Submitted:      August 9, 2012
Date Decided:        September 4, 2012