

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00120-CV

_____

JUDGE CARLOS CORTEZ, Appellant

V.

COYT RANDAL (RANDY) JOHNSTON, THE DALLAS MORNING NEWS, ALM MEDIA
LLC D/B/A THE TEXAS LAWYER, AND JUDGE MARTY LOWY, Appellees

On Appeal from the 298th District Court
Dallas County, Texas
Trial Court No. DC-10-14346

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Judge Carlos Cortez, currently a Texas district judge in Dallas, continues his now long-standing fight to avoid the public disclosure of certain court records, which were filed in response to discovery requests in his earlier defamation lawsuit against attorney Coyt Randal (Randy) Johnston. This is Cortez' second appeal to this Court.[1] Before his earlier appeal to this Court, Cortez had withdrawn his request that the trial court seal the records and had elected to pursue only his claim that the records did not fit within the definition of court records and, thus, were not presumably public. His initial appeal established that the records are, indeed, court records. *See Cortez v. Johnston*, 378 S.W.3d 468 (Tex. App.—Texarkana 2012, pet. denied). In an attempt to continue the fight after that appeal, Cortez then asked the trial court to seal the records. The trial court refused.[2] We affirm the trial court's ruling because (1) Cortez effectively waived his sealing request by withdrawing it earlier, (2) even if the sealing request is properly before us, the refusal to seal the records did not abuse the trial court's discretion, and (3) Johnston should no longer be restrained from releasing his copy of the records.

First, some more background.[3] Cortez originally filed a defamation suit against Johnston. In the suit, Cortez made a discovery request of Johnston for any records that justified Johnston's alleged claims about Cortez. In response, Johnston filed various records with the district clerk. Unexpectedly faced with the imminent disclosure of evidence sullying the very

[1]We again serve by special assignment because of the recusal of the entire Fifth Court of Appeals.

[2]This appeal complains of an order of the 298th Judicial District Court in Dallas County ruling that Cortez had waived his motion to seal by withdrawing it earlier, that, on the merits, the records in question should not be sealed, and that Johnston should no longer be prevented from releasing the copy of such documents in his possession.

[3]A fuller statement of facts can be found in our opinion on the first appeal. *See Cortez*, 378 S.W.3d 468.

reputation he had sought to protect by pursuing his libel suit against Johnston, Cortez immediately nonsuited his complaint against Johnston and asked that the produced documents be sealed. With Cortez' sealing request pending, *The Dallas Morning News* and ALM Media LLC d/b/a *The Texas Lawyer*—and later Judge Marty Lowy—intervened and opposed the request because each desired access to the produced documents. The trial court conducted a hearing on just the issue of whether the documents were "court records" and concluded that, in April 2012, they were "court records" and therefore presumptively available for public disclosure. The trial court also made alternative findings that, even if the documents were not court records, they were unfiled discovery materials that were available for disclosure to the public under Rule 76a of the Texas Rules of Civil Procedure. Cortez then withdrew his request to seal the documents— the request he now pursues in this proceeding.

Presently, the documents or copies are in the hands of the Dallas County District Clerk and of Johnston, the individual who tendered them to the clerk's office. Cortez obtained an order directing Johnston not to release the documents to the public until fourteen days after the trial court's order was signed. This Court extended that stay for the course of our appellate review, essentially to protect our pending review of the case.

*(1)    Cortez Effectively Waived his Sealing Request by Withdrawing it Earlier*

In the first presentation of his case to the trial court, Cortez explicitly withdrew his motion to seal, four days before the date set for hearing on the motion, ostensibly to obtain a higher court's review of only the narrow question of whether these were court records. We

3

conclude, based on controlling authority from Texas' highest civil court, that this tactic removed the sealing issue from the table permanently.

Cortez took the position below that, by withdrawing his motion to seal, he could appeal first from the trial court's decision that they were court records and, if that ruling was affirmed on appeal—as it was—subsequently raise the sealing issue with the trial court and appeal from that determination as well. He supports that position by directing this Court to *General Tire, Inc. v. Kepple*, 970 S.W.2d 520, 525 (Tex. 1998), a case in which the trial court determined that the records in question were not court records. After such a determination, nothing further was to occur, and an immediate appeal made perfect sense. Other cases, however, suggest a different procedure is proper. Where trial courts have found that the disputed records *are* court records, the appeals from those rulings have always awaited the sealing ruling on the merits. *See Dallas Morning News v. Fifth Court of Appeals*, 842 S.W.2d 655 (Tex. 1992), *B.P. Prods. N.A., Inc. v. Houston Chronicle Pub. Co.*, 263 S.W.3d 31 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Upjohn Co. v. Freeman*, 906 S.W.2d 92, 95 (Tex. App.—Dallas 1995, no pet.). We find no case holding that a separate appeal can properly be brought from each determination.

Cortez claims support from the Texas Supreme Court for his argument that individual parts of the sealing procedure—here, the determination of whether a document is a "court record"—can be severed from other parts of that same sealing procedure—for example, whether the record or situation is such that the records should be sealed. *See In re Dallas Morning News, Inc.*, 10 S.W.3d 298 (Tex. 1999). Our analysis of that case indicates otherwise.

4

The 1999 majority opinion in *Dallas Morning News* is short, but that opinion is accompanied by three separate concurrences. In one concurrence authored by a single justice, Justice Baker did indeed opine that every order rendered in connection with a Rule 76a matter is immediately and separately appealable. The two other concurrences, however, joined collectively by eight justices, differ from Justice Baker's view.

One concurrence, written by Justice Gonzales and joined by Justices Phillips, Hecht, and Owen, concluded that resolving Rule 76a issues piecemeal was inappropriate:

> Justice Baker argues that rule 76a(8)'s statement that a party may appeal "any order" or portion of an order "relating to sealing or unsealing," means any order is immediately appealable. Such a construction leads to the absurd result that every decision a trial court makes involving rule 76a proceedings, no matter how routine or trivial, may be immediately appealed. A court only acts through its orders and judgments. *See City of Hurst v. City of Colleyville*, 501 S.W.2d 140, 143 (Tex. Civ. App.—Fort Worth 1973, writ ref'd n.r.e.). Moreover, under this construction, every ruling is deemed severed and final as soon as it is rendered. Consequently, the appellate timetable would immediately begin to run on every order when the trial court signs it. The rules do not contemplate such a chaotic appellate system.
>
> We may not read the phrase "any order . . . relating to sealing or unsealing" in isolation from the rest of the rule. We derive the meaning of the rule as a whole and not from isolated phrases. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). I conclude that the rule, when read as a whole, means that once a trial court renders an order fully disposing of a rule 76a motion, then that order and all related matters may then be appealed. First, subsection (8) anticipates that the appeal will be taken only after a rule 76a hearing, because it provides for an appeal "by any party or intervenor who participated *in the hearing preceding issuance of such order*." TEX. R. CIV. P. 76a(8) (emphasis added).

*Id.* at 305. The other concurrence, written by Justice Abbott and joined by Justices Enoch, Hankinson, and O'Neill, takes no issue with the Gonzales concurrence. The Abbott concurrence opines that Rule 76a(8) "expressly provides an appellate remedy from a trial court's order *fully*

*disposing of* a Rule 76a motion, but that it does not provide an appeal from the court's order that does nothing more than set a Rule 76a hearing." *Id.* at 300 n.1 (emphasis added). The concurrence also reads the Rule as providing that any order *disposing of* a 76a motion is severed from the case. *Id.* at 300.

In our view, four justices categorically agreed that appeal was proper only when the trial court entered an order fully disposing of a Rule 76a motion. Four other justices, using similar language, agreed that the appellate remedy was appropriately from an order "fully disposing of" a Rule 76a motion. We, therefore, conclude that the proper nature of an appeal in a Rule 76a proceeding is not a piecemeal appeal, but a single appeal from the final determination on sealing. Cortez chose to withdraw his request to seal and to proceed solely on his contention that the documents were not court records. By so doing, he chose his procedural vehicle. We conclude that his withdrawal of his sealing request before the first appeal withdrew that issue. *See id.* at 305. He cannot now pursue the substantive issue seeking to seal the records.

Cortez contends that his action was required as his only method to prevent release of the documents. His argument is grounded on the notion that the April 15 "court records" order by the trial court was a severed, final order, that the trial court have plenary authority over that order for only thirty days, and that only four days were left. Thus, Cortez pursued a motion to "set security" in an effort to prevent Johnston from making the documents available to the public. Cortez' argument is that he withdrew the motion to seal only in an effort to obtain a quick ruling

6

from the trial court on his attempt to obtain a supersedeas, with no intent to waive his right to seek to have the documents sealed.[4]

This argument is based on a misunderstanding of the Rule. Under these facts, with this ruling by the trial court, the court record determination was only the first part of the sealing determination. Certainly, the sealing decision is a two-step process, but not one allowing two separate appeals. We also must recognize that the trial court has "continuing jurisdiction" over the sealing procedure, and thus it would necessarily have retained authority over the orders entered as part of that proceeding. TEX. R. CIV. P. 76a(7).

*(2)*      *Even if the Sealing Request Is Properly Before Us, the Refusal to Seal the Records Did Not Abuse the Trial Court's Discretion*

Even if this appeal was properly before us, we conclude that the trial court was within its discretionary authority to make the substantive ruling that the documents should not be sealed. In its third ground for unsealing the records, the trial court ruled that Cortez "has not shown a specific, serious and substantial interest, or any interest, that would clearly outweigh the presumption of openness."

We review the trial court's rulings on a Rule 76a proceeding for an abuse of discretion. *Kepple*, 970 S.W.2d 520; *Freeman*, 906 S.W.2d at 95; *Eli Lilly & Co. v. Biffle*, 868 S.W.2d 806, 809 (Tex. App.—Dallas 1993, no pet.). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.

---

[4]Cortez argues that his motion was withdrawn explicitly "without prejudice." That Cortez filed a notice of nonsuit, stating it was without prejudice does not mean that doing so achieved that purpose. *See Epps v. Fowler*, 351 S.W.3d 862, 869–70 (Tex. 2011).

1985). An abuse of discretion does not exist when the trial court bases its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Freeman*, 906 S.W.2d at 95, *Wood v. James R. Moriarty, P.C.*, 940 S.W.2d 359, 361 (Tex. App.—Dallas 1997, no writ).

Court records, as defined by Rule 76a, "are presumed to be open to the general public." TEX. R. CIV. P. 76a(1).[5] Sealing should be rarely ordered. *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 905 S.W.2d 683, 684 (Tex. App.—Texarkana 1995, no writ). The party seeking to seal court records has a heavy burden. *Boardman v. Elm Block Dev. Ltd. Partnership*, 872 S.W.2d 297, 299 (Tex. App.—Eastland 1994, no writ).

Under the Rule, court records may be sealed only on a showing of all of the following:

(a)     a specific, serious and substantial interest which clearly outweighs:
        (1)     this presumption of openness;
        (2)     any probable adverse effect that sealing will have upon the general public health or safety;
(b)     no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

TEX. R. CIV. P. 76a(1).

The specific interests to be considered for sealing can be "financial, reputational, or otherwise." *McAfee v. Weiss*, 336 S.W.3d 840, 845 (Tex. App.—Dallas 2011, pet. denied); *see also, Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) (established trade secret); *In re Browning–Ferris Indus., Inc.*, 267 S.W.3d 508, 512–13 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (privileged documents affecting ongoing environmental clean-up).

---

[5]On the other hand, another court held it was the burden of the party claiming documents were open to the public to prove those documents are court records. *See In re Coastal Bend Coll.*, 276 S.W.3d 83, 86 (Tex. App.—San Antonio 2008, no pet.). That appears to run counter to the presumption of openness, but may be explained by the fact that the document in question is not part of the laundry list of court records defined by the Rule.

Cortez suggests that he has such a "serious and substantial interest" because the release of the records would be a violation of his federal constitutional right to privacy. A right of privacy is not explicitly mentioned in the Constitution. However, the United States Supreme Court has inferred its existence as a right of personal privacy, or as a guarantee of certain areas or zones of privacy, and stated that it does exist under the Due Process Clause of the Fourteenth Amendment. *See Carey v. Population Servs. Int'l*, 431 U.S. 678, 684 (1977). Courts have interpreted both the United States and Texas Constitutions to recognize an individual's privacy interest in avoiding the disclosure of certain personal matters, such as marital relationships, procreation, contraception, family relationships, child rearing and education, and medical records. *See Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 679 (Tex. 1976).

Cortez focuses his analysis on *Lawrence v. Texas*, 539 U.S. 558 (2003), a case that invalidated a statute criminalizing adult, consensual homosexual interactions as unconstitutional. The Court carefully noted that the case did not involve minors, those who might be coerced or in relationships where consent might not easily be refused, public conduct or prostitution, and limited its decision to the particular statute and facts before it. *Id.* at 578. Cortez seeks to place the documents within the outer fringes of *Lawrence*, suggesting that the landmark decision will logically and necessarily extend farther than its facts into information about other types of relationships.

Cortez suggests that, if the court cannot order documents sealed, then the libeler can file suit, file documents containing scurrilous statements, dismiss the suit and force their unsealing.

9

That hypothetical does not match the facts in this case. Here, Cortez claimed to be defamed, filed suit, demanded proof, and then, when responsive evidence was filed, dismissed his suit and demanded that the evidence be sealed.

The language used in briefing this issue takes its lead from language describing torts arising from a breach of the right of privacy and the definitions connected with that term. *See Indus. Found. of the S.*, 540 S.W.2d at 682. Although *Lawrence* is the more recent case, we believe that it does not impact those decisions beyond its immediate application to the statute being reviewed in that case.

Again, focusing on the language of Rule 76a(1), we look to see if there is a "specific, serious and substantial interest" that outweighs the presumption of openness and any probable adverse effect that sealing will have on general public health or safety. According to Cortez, that interest is his interest in privacy. A protectable privacy interest can include disclosure of a party's private affairs or concerns that would be highly offensive to a reasonable person, *Valenzuela v. Aquino*, 853 S.W.2d 512 (Tex. 1993), or of embarrassing private facts about himself and unwarranted publication of those facts. *Hogan v. Hearst Corp.*, 945 S.W.2d 246 (Tex. App.—San Antonio 1997, no writ); *see Fox v. Anonymous*, 869 S.W.2d 499 (Tex. App.—San Antonio 1993, writ denied) (protecting privacy right of minor sexual assault victim).

None would argue that these documents are not embarrassing and offensive. Balanced against that, Cortez is clearly a public figure who is, at present, an elected official whose privacy rights are limited by virtue of his public status. *See, e.g., Garrison v. Louisiana*, 379 U.S. 64, 73

10

(1964); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Mabe v. City of Galveston*, 687 S.W.2d 769, 771–72 (Tex. App.—Houston [1st Dist.] 1985, writ dism'd).

Although a memorandum decision, the case of *Nguyen v. Dallas Morning News, L.P.*, No. 2-06-298-CV, 2008 WL 2511183, at **4–6 (Tex. App.—Fort Worth 2008, no pet.) (mem. op.), is instructive and persuasive. There, the embarrassing details of sexual misconduct of a parochial school official directed at minors were deemed of legitimate public concern and were thus unsealed, using an analogy to the tort of invasion of privacy. The legitimate public concern in *Nguyen* was arguably not as strong as in this case, which involves a publically elected member of the state judiciary along with allegations of criminal activity.

Whether any particular information is of legitimate public concern is fact dependent. *Fort Worth Star-Telegram v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995); *Indus. Found. of the S.*, 540 S.W.2d at 685. Criminal allegations involve legitimate public concern. *See Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 250–52 (5th Cir. 2007); *Doe*, 915 S.W.2d at 472, 474–75.

The trial court had before it the documents themselves, the pleadings, and the actions of the parties as shown by the history of the underlying libel suit and the allegations therein. The trial court sought to balance the interest in privacy against the public interest in disclosure, in light of the historical preference that court proceedings be open to the public absent a strong reason to close or keep them from the public. We cannot say, taking all of these matters together, that the trial court abused its discretion by concluding that Cortez' interest in privacy did not clearly outweigh the presumption of openness and the reasons underlying its existence. *See* TEX. R. CIV. P. 76a(1)(a).

11

*(3)      Johnston Should No Longer Be Restrained from Releasing his Copy of the Records*

Johnston personally possesses these same documents and has declined to provide them to the media, first, due to orders by the trial court and, then, following the directives of this Court. The order existed before the first appeal to this Court and provides generally that Johnson is not to disseminate the documents pending completion of the appeal. The trial court vacated those orders, but delayed the effect of its order of vacation for fourteen days to give Cortez an opportunity to obtain a similar order from the reviewing court. We issued such an order, and the documents thus remain confidential.

The underlying concept is that, if Johnson reveals the contents of the documents, the appeal becomes moot. That is evident. While these orders did protect the ability of the trial court to address the sealing request and of this Court to address the appeal, the subject matter of this appeal is not the documents in Johnston's possession. This appeal is from orders concerning the documents in the possession of the district clerk.

The order as entered is in effect an injunction, directing a party to the lawsuit not to release documents in his possession. This is an entirely different problem than the one we have dealt with in two separate appeals. In Johnston's brief, counsel points out that, even though Cortez has not asked this Court on appeal for injunctive relief and has briefed no argument to support retention of the order, he still seeks to maintain the order on motion to set security. This, Johnston argues, effectively enjoins Johnston's First Amendment rights. Johnston points out that Cortez nonsuited his case against Johnston, leaving no pending lawsuit that might provide support for ancillary orders. He finally also points out that, even if Cortez prevailed and the

12

documents were sealed, Johnston would still be able to distribute his copies and would already have done so except for court orders.

Our jurisdiction no longer needs protecting. We withdraw all orders that Johnston not disclose the records.

We affirm the trial court's ruling.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 18, 2014
Date Decided:       April 16, 2014